UNITED STATES BANKRUPTCY COURT
DISTRICT OF OREGON

In re

Case No. _____

Amended

**NOTICE OF INTENT TO SELL REAL OR PERSONAL PROPERTY, COMPENSATE REAL ESTATE BROKER, AND/OR PAY ANY SECURED CREDITOR'S FEES AND COSTS; MOTION FOR AUTHORITY TO SELL PROPERTY FREE AND CLEAR OF LIENS; AND NOTICE OF HEARING**

[Do not use to sell personally identifiable information about individuals]

Debtor

**Notice**

NOTICE IS GIVEN that _____ (movant), the _____ [*enter movant's role in the case (for example, debtor or trustee)*], intends to sell the property described below and moves for authority to sell the property free and clear of liens under 11 U.S.C. § 363(f). Movant's address and phone number are:

The holders of liens of which the movant requests the property be sold free and clear are [*list lienholders*]:

If you wish to object to any aspect of the sale or fees disclosed in paragraph 7 or 15, you must--

1. Attend the hearing set in paragraph 3 below; and

2. Within 21 days after the service date in paragraph 17 below, file with the clerk at 1050 SW 6th Ave. #700, Portland OR 97204 or 405 E 8th Ave. #2600, Eugene OR 97401:

**760.5 (3/5/206)**          Page 1 of 6

a.  a written objection stating the specific facts upon which the objection is based, and

b.  a certificate of service of the objection on the movant.

3.  A hearing on the motion and any objections to the sale or fees, which

is [*check this box only if directed to do so by the court*]

is not

an evidentiary hearing at which witnesses may testify, is scheduled as follows:

**Date:** _____        **Time:** _____

**Location**:     Courtroom #_____, _____

Telephone Hearing [*See Local Bankruptcy Form (LBF) 888, Telephone Hearing Requirements.*]

**Call In Number:** (855) 244-8681

**Access Code:**      2319 199 8338 for Judge David W. Hercher (dwh)

2311 562 9438 for Judge Peter C. McKittrick (pcm)

2303 266 1826 for Judge Teresa H. Pearson (thp)

2318 130 5070 for Judge Kathryn F. Evans (kfe)

Video Hearing. To connect, see www.orb.uscourts.gov/video-hearings.

If no timely objection is filed, an order may be lodged and the hearing may be canceled. Parties are encouraged to check the hearing calendar at https://www.orb.uscourts.gov after the objection deadline has passed.

**Motion**

The movant moves for authority to sell the property free and clear of liens under § 363(f) as follows--

1.  The specific subsections of § 363(f) movant relies on for authority to sell the property free and clear of liens are [*specify for each lienholder*]:

2.  Buyer's name and relation or other connection to debtor:

3.  General description of the property [*if real property, state street address here and attach legal description as an exhibit to the notice filed with the court*]:

4.  A copy of the full property description or inventory may be examined or obtained at:

5.  The property may be previewed at [*include time and place*]:

6.  Other parties to the transaction and their relationship to the debtor are:

7.  The gross sale price is: $ _____.

    All liens on the property total $ _____, of which movant believes a total of $ _____ need not be paid as secured claims (because the lien is invalid, avoidable, etc., the lienholder consents to less than full payment, or part or all of the underlying debt is not allowable).

    Secured creditor also seeks reimbursement of $ _____ for fees and costs.
    Total sales costs will be: $ _____.

    All tax consequences have been considered, and it presently appears that the sale will result in net proceeds to the estate after payment of valid liens, fees, costs, and taxes of approximately: $ _____.

**760.5 (3/5/206)**

8. The sale ____ is ____ is not [*check one*] of substantially all of the debtor's assets. Terms and conditions of sale:

9. Competing bids must be submitted to the movant no later than _____ and must exceed the above offer by at least _____ and be on the same or more favorable terms to the estate.

10. Summary of all available information regarding valuation, including any independent appraisals:

11. If paragraph 7 indicates little or no equity for the estate, the reason for the sale is:

and expenses and taxes resulting from the sale will be paid as follows:

12. (Chapter 11 cases only) The reason for proposing the sale before confirmation of a plan of reorganization is:

**760.5 (3/5/206)**                    Page 4 of 6

13. The following information relates to liens on the property which are listed in priority order:

| Name | Service Address [*See Federal Rule of Bankruptcy Procedure (FRBP) 7004*] | Approx. Lien Amount | Indicate Treatment at Closing (Fully Paid, Partially Paid, or Not Paid.) |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

Of the liens listed in this paragraph designated to be fully paid, movant does not request that the sale be free and clear but moves for authority to pay them in full.

14. Any liens not fully paid at closing will attach to the sale proceeds in the priority they attach to the property. Any proceeds remaining after paying liens, expenses, taxes, commissions, fees, costs, or other charges as provided in this motion, must be held in trust until the court orders payment.

15. (If real property) The court appointed real estate broker, _____ _____will be paid _____.

16. If this is a chapter 11 case, this motion complies with the guidelines set forth in LBF 363, *Procedures re: Motions for Sale of All or Substantially All Assets.*

17. I certify that on _____ this document was served--

[_] [*check this box if movant is chapter 7 trustee*] under FRBP 7004 on debtor, U.S. trustee, each named lienholder at the address listed above, the creditors' committee chairperson (if any), and their attorneys.

[_] [*check this box if movant is not chapter 7 trustee*] under FRBP 7004 on debtor, trustee (if any), U.S. trustee, each named lienholder at the address listed above, the creditors' committee chairperson (if any), and their attorneys, and that it was also sent on that date, pursuant to FRBP 2002(a), to all creditors and all parties as listed in the court's records that were  obtained on _____, a copy of which is attached to the document filed with the court.

18. For further information, contact:




_____          _____
Date                 Signature & Relation to Movant

                     _____
                     (If debtor is movant) Debtor's Address & Last 4 Digits of Taxpayer ID#

                     _____


**760.5 (3/5/206)**              Page 6 of 6

## INTELLECTUAL PROPERTY ASSET PURCHASE AGREEMENT

This Intellectual Property Asset Purchase Agreement, dated and effective as of July 9, 2026 (the "**Agreement**"), is by and between Kenneth Eiler, Trustee of the Estate of Oregon Brewing, Company (U.S. Bankruptcy Court for the District of Oregon (Case No. 25-33945-pcm7) ("**Seller**"), and Silver Scope Media Limited, a company organized under the laws of the United Kingdom ("**Buyer**"). Buyer and Seller are hereafter the "**Parties**."

### RECITALS

A.      On November 24, 2025, Oregon Brewing Company (the "**Debtor**") filed a chapter 7 petition in the United States Bankruptcy Court for the District of Oregon (the "**Bankruptcy Case**").

B.      Kenneth Eiler was appointed as the Trustee (the "**Trustee**"), for the Debtor's bankruptcy estate (the "**Estate**") in Bankruptcy Case on November 25, 2025

C.      The Estate owns certain intellectual property assets, including trademarks, copyrights, and the rights and documents related thereto, as more fully described on Exhibit 1 hereto (the "**Assets**")

D.      Buyer wants to purchase and Seller wants to sell to Buyer, or a successful overbidder, as the case may be, the Assets free and clear of all liens, claims, encumbrances, licenses and interests in accordance with Section 363 of the Bankruptcy Code, and otherwise on the terms set forth below.

NOW, THEREFORE, for and in consideration of the premises and the agreements, covenants, representations and warranties hereinafter set forth and other good and valuable consideration, the receipt and adequacy of which are forever acknowledged and confessed, the Parties, intending to be legally bound, hereby agree as follows:

### AGREEMENT

**1.      The Transaction**. Subject to the terms, conditions and other provisions of this Agreement, and subject to Court Approval, at the Closing, the Seller shall grant, sell, assign, transfer and convey to the Buyer, and the Buyer shall acquire from the Seller, all of the Debtor's right, title and interest in, to and under all Assets listed on Exhibit 1 (the "**Transaction**").  Assets include all goodwill of the Debtor connected with the use of the Assets.  Buyer is not assuming any of the Seller's liabilities and is not assuming any executory contracts or unexpired leases, including without limitation any liabilities arising from or relating to Debtor's infringement of any third party rights.

**2.      Purchase Price.** The purchase price of the Assets is Four Hundred Thousand Dollars ($400,000.00) payable in collected funds on the Closing Date defined below (the "**Purchase Price**").

Page 1 of 12  - **INTELLECTUAL PROPERTY ASSET PURCHASE AGREEMENT**

a.       Cash Deposit at Execution of Agreement. Upon execution of this Agreement, Buyer agrees to pay to Seller the cash sum of Forty Thousand Dollars ($40,000.00) which is equal to ten percent (10%) of the Purchase Price, to be applied towards the Purchase Price if Buyer is the successful bidder by wire transfer (the "**Deposit**"), as a deposit against the Purchase Price. The Deposit shall be refunded promptly to Buyer if: (i) the Bankruptcy Court does not approve Seller's entry into this Agreement; (ii) Buyer is not the successful bidder or (ii) the Closing fails to occur within the time specified in this Agreement for any reason other than Buyer's breach of this Agreement or any of its obligations hereunder. If the Closing fails to occur as a result of Buyer's breach of this Agreement, Seller shall be entitled to receive and retain the Deposit as liquidated damages as provided below.

BUYER AND SELLER AGREE THAT: (A) IF BUYER FAILS TO COMPLETE THE PURCHASE OF THE ASSETS PURSUANT TO THIS AGREEMENT BY REASON OF BUYER'S BREACH OF THIS AGREEMENT, THEN SELLER'S SOLE AND EXCLUSIVE REMEDY SHALL BE TO TERMINATE THIS AGREEMENT AND RECEIVE AND RETAIN THE DEPOSIT TO THE EXTENT THAT IT HAS BECOME NONREFUNDABLE TO BUYER PURSUANT TO THIS AGREEMENT AS LIQUIDATED DAMAGES AND NOT AS A PENALTY, AND UNDER SUCH CIRCUMSTANCES, SELLER WAIVES ALL RIGHTS TO OBTAIN BUYER'S SPECIFIC PERFORMANCE; AND (B) BECAUSE OF THE NATURE OF THE TRANSACTION CONTEMPLATED BY THIS AGREEMENT, IT WOULD BE IMPRACTICAL AND EXTREMELY DIFFICULT TO FIX SELLER'S ACTUAL DAMAGES IF SUCH A BREACH OCCURS AND THEREFORE THE AMOUNT OF LIQUIDATED DAMAGES SPECIFIED ABOVE SHALL BE PRESUMED TO BE THE AMOUNT OF DAMAGES SELLER WOULD SUSTAIN BY REASON OF SUCH A BREACH AND REPRESENTS A REASONABLE ESTIMATE OF THOSE DAMAGES, TAKING INTO ACCOUNT, AMONG OTHER FACTORS, THE CIRCUMSTANCES EXISTING AS OF THE TIME OF ENTRY INTO THIS AGREEMENT.

b.       Collected Funds Paid at Closing. Buyer shall deliver to Seller the balance of the Purchase Price at the Closing via wire transfer. Said sum shall be paid to Seller prior to or on the Closing Date.

**3.       Title**. Seller shall convey title to the Assets AS IS, WHERE IS, to Buyer by bill of sale (the "**Bill of Sale**") in a form reasonably acceptable to Seller, and as approved by the Bankruptcy Court, free and clear of all liens, claims, licenses, encumbrances and interests pursuant to Section 363 of the Bankruptcy Code, including but not limited to all claims, liabilities, damages, or liens arising from or relating to Debtor's alleged or actual infringement of any third party rights that the holders thereof receive notice of this Transaction

**4.       Buyer Due Diligence**. Buyer is experienced, and/or has engaged expert advisors experienced in the evaluation and purchase of property and assets such as the Assets contemplated hereunder. Buyer has undertaken such investigation and has been provided with and has evaluated such documents and information as it has deemed necessary to permit it to make an informed and intelligent decision with respect to the execution, delivery and performance of this Agreement.

**5.    No Representations; Indemnity**.

a.    EXCEPT AS EXPRESSLY PROVIDED HEREIN OR IN THE SALE ORDER (AS HEREAFTER DEFINED), BUYER AGREES AND ACKNOWLEDGES THAT THE TRANSFER OF THE ASSETS IS MADE PURSUANT TO ORDER OF THE BANKRUPTCY COURT AND IS MADE "AS IS" AND "WHERE IS", "WITHOUT RECOURSE", AND WITH ALL FAULTS AND DEFECTS, LATENT OR OTHERWISE AND ACKNOWLEDGES AND AGREES THAT, EXCEPT AS EXPRESSLY PROVIDED HEREIN, SELLER MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND WHATSOEVER WITH RESPECT TO THE ASSETS OR OTHERWISE, EXPRESS OR IMPLIED, BY OPERATION OF LAW OR OTHERWISE, INCLUDING AS TO (A) THE VALUE, NATURE, LOCATION, QUALITY, OR CONDITION OF THE ASSETS; (B) THE INCOME DERIVED OR TO BE DERIVED FROM THE ASSETS; (C) THE SUITABILITY OF THE ASSETS FOR ANY AND ALL ACTIVITIES AND USES THAT THE BUYER MAY CONDUCT FOLLOWING THE CLOSING; (D) THE COMPLIANCE OF OR BY THE ASSETS OR THE BUSINESS WITH ANY LAWS, RULES, ORDINANCES, OR REGULATIONS OF ANY APPLICABLE GOVERNMENT ENTITY; (E) THE HABITABILITY, SUITABILITY, MERCHANTABILITY, MARKETABILITY, PROFITABILITY, OR FITNESS FOR A PARTICULAR PURPOSE OR ANY PURPOSE OF THE ASSETS; (F) THE MANNER OR QUALITY OF THE CONSTRUCTION OR MATERIALS, IF ANY, INCORPORATED INTO THE ASSETS; (G) THE PHYSICAL CONDITION OF THE ASSETS OR THE MANNER, QUALITY, STATE OF REPAIR, OR LACK OF REPAIR OF THE ASSETS; (H) NON-INFRINGEMENT OF THIRD-PARTY RIGHTS, OR THAT THE ASSETS DO NOT CONTAIN ANY ERRORS, DEFECTS, OR VULNERABILITIES; (I) THE ENFORCEABILITY OF ANY CONTRACT OR RIGHT OR PERMIT ASSIGNED HEREUNDER; (J) THE NATURE AND/OR EXTENT OF THE DEBTOR'S INTEREST IN THE ASSETS, OR (K) ANY OTHER MATTER WITH RESPECT TO THE ASSETS.  THE BUYER ACKNOWLEDGES THAT THE SELLER CAN ONLY TRANSFER WHATEVER INTEREST THE DEBTOR MAY HAVE IN THE ASSETS AND THAT THE SELLER CANNOT AND DOES NOT WARRANT THE EXTENT OF THAT INTEREST. IT IS FULLY RELYING ON THE BUYER'S (OR THE BUYER'S REPRESENTATIVES') INSPECTIONS OF THE ASSETS AND NOT UPON ANY STATEMENT (ORAL OR WRITTEN) WHICH MAY HAVE BEEN MADE OR MAY BE MADE (OR PURPORTEDLY MADE) BY THE SELLER OR ANY OF THEIR REPRESENTATIVES. THE BUYER ACKNOWLEDGES THAT THE BUYER HAS (OR THE BUYER'S REPRESENTATIVES HAVE) THOROUGHLY INSPECTED AND EXAMINED THE ASSETS TO THE EXTENT DEEMED NECESSARY BY THE BUYER IN ORDER TO ENABLE THE BUYER TO EVALUATE THE CONDITION OF THE ASSETS, AND ALL OTHER ASPECTS OF THE ASSETS, AND THE BUYER ACKNOWLEDGES THAT, THE BUYER IS RELYING SOLELY UPON ITS OWN (OR ITS REPRESENTATIVES') INSPECTION, EXAMINATION AND EVALUATION OF THE ASSETS AND THEIR CONDITION. THE BUYER ACKNOWLEDGES THAT ANY CONDITION OF THE ASSETS THAT THE BUYER DISCOVERS OR DESIRES TO CORRECT OR IMPROVE PRIOR TO OR AFTER THE CLOSING SHALL BE AT THE BUYER'S SOLE EXPENSE.

b.    BUYER HEREBY AGREES TO INDEMNIFY, DEFEND AND HOLD SELLER AND ITS, ATTORNEYS, CONSULTANTS, INDEPENDENT CONTRACTORS,

Page 3 of 4  - **INTELLECTUAL PROPERTY ASSET PURCHASE AGREEMENT**

SUCCESSORS AND ASSIGNS (COLLECTIVELY, THE "**INDEMNITEES**") HARMLESS FROM AND AGAINST ANY AND ALL LIABILITIES, DEMANDS, CLAIMS, ACTIONS OR CAUSES OF ACTION, ASSESSMENTS, LOSSES, COSTS, DAMAGES OR PENALTIES OR EXPENSES, INCLUDING ATTORNEYS' FEES, IMPOSED ON, ACCRUED AGAINST, ASSERTED AGAINST, SUSTAINED OR INCURRED BY INDEMNITEES, DIRECTLY OR INDIRECTLY, RESULTING FROM, ARISING OUT OF, RELATED TO, OR BY VIRTUE OF: (A) ANY LIABILITY OR OBLIGATION OF BUYER ARISING PRIOR TO, ON OR AFTER THE CLOSING DATE, WHETHER OR NOT RELATED TO THE OWNERSHIP OR USE OF THE ASSETS; (B) BREACH OF ANY REPRESENTATION, WARRANTY, COVENANT OR AGREEMENT OF BUYER CONTAINED HEREIN OR IN ANY AGREEMENT EXECUTED IN CONNECTION HEREWITH; AND (C) THE OWNERSHIP, SALE, USE, OR DISTRIBUTION OF THE ASSETS FROM AND AFTER THE CLOSING DATE.

c.    THE BUYER HEREBY ACKNOWLEDGES THAT THE SELLER WOULD NOT AGREE TO SELL THE ASSETS ON THE TERMS AND CONDITIONS THAT ARE SET FORTH IN THIS AGREEMENT IF THE BUYER DID NOT AGREE TO EACH AND EVERY PROVISION IN THIS SECTION 5.  THE PROVISIONS OF THIS SECTION 5 SHALL SURVIVE THE EXPIRATION OR THE TERMINATION OF THIS AGREEMENT OR THE CLOSING (AS APPLICABLE).

**d.    Seller's Representations and Warranties**. Seller represents and warrants that Seller is the Chapter 7 trustee in the Bankruptcy Case. Subject to entry of a sale order by the Bankruptcy Court (the "**Sale Order**"), Seller has the authority to enter into this Agreement and to consummate the transactions contemplated thereby.

**6.    Buyer's Representations and Warranties**. Buyer makes the following representations, warranties and covenants (including, without limitation, those made elsewhere in this Agreement), which shall survive execution of this Agreement, and which shall survive the Closing:

a.    Authority. Buyer has the power and authority to enter into this Agreement and consummate the transactions contemplated thereby.

b.    Investigations. Buyer acknowledges that Seller, has limited information and documents concerning the Assets; Buyer has made its own investigation concerning Assets, the condition of title or any other matter pertaining to the Assets; and, other than the express representations made by Seller pursuant to this Agreement, Buyer is not relying on any representations, warranties or inducements of Seller (or any agent of Seller) with respect to the Assets, the condition of title to the Assets or any other matter pertaining to the Assets, the transaction contemplated herein or otherwise.

**7.    Conditions Precedent to Closing for Benefit of Seller**. As independent conditions precedent for the benefit of Seller, Seller's obligations hereunder, including the obligation to transfer the Assets to Buyer, are contingent upon satisfaction of each of the following conditions unless otherwise waived by Seller in writing on or before the Closing:

      a.        <u>Receipt by Seller of Buyer's Deliveries</u>. Seller shall have received at the Closing the deliveries required by Section 9 of this Agreement.

      b.        <u>Sale Order and Findings</u>. This Agreement and the transactions contemplated herein shall have been approved by the Bankruptcy Court under 11 USC §363 (b) and (f), and such Sale Order shall be final with no appeal having been filed (or if any appeal has been filed, no stay shall have been issued either preventing this Agreement from becoming enforceable (the "**Final Sale Order**").

      c.        <u>Buyer is Successful Bidder</u>. Buyer shall be the successful bidder as determined by Seller and approved by the Bankruptcy Court.

      d.        <u>No Violation of Orders</u>. No preliminary or permanent injunction or other order that would prevent the consummation of the transactions contemplated by this Agreement shall be in effect.

**8.**      **Conditions Precedent to Buyer's Closing**. As independent conditions precedent for the benefit of Buyer, Buyer's obligations hereunder, including the obligation to pay the Purchase Price, are contingent upon satisfaction of each of the following conditions unless otherwise waived by Buyer in writing on or before the Closing:

      a.        <u>Receipt by Buyer of Seller's Deliveries</u>. Buyer shall have received at the Closing the deliveries required under Section 9 of this Agreement.

      b.        <u>Sale Order and Findings</u>. Entry of the Final Sale Order.

      c.        <u>Buyer is Successful Bidder</u>. Buyer shall be the successful bidder as determined by Seller and approved by the Bankruptcy Court.

      d.        <u>No Violation of Orders</u>. No preliminary or permanent injunction or other order that would prevent the consummation of the transactions contemplated by this Agreement shall be in effect.

**9.**      **Deliveries at Closing**. The Parties shall make the following deliveries at Closing:

      a.        <u>Purchase Price</u>. Buyer shall deliver to Seller a cashier's check or deliver funds via wire transfer to the account of Seller in the amount of the Purchase Price, less the Deposit.

      b.        <u>Bill of Sale</u>. Seller shall deliver to Buyer a Bill of Sale in a form reasonably acceptable to Seller.

**10.**      **Closing.**  Closing of the sale (the "**Closing**") shall occur at the offices of Sussman Shank LLP, or such other location as mutually agreed upon by the Parties, no later 14 days after entry of the Final Sale Order, or such other dated as mutually agreed to by the parties (the "**Closing Date**").

Page 3 of 4  - **INTELLECTUAL PROPERTY ASSET PURCHASE AGREEMENT**

**11.    Court Approval.**  The sale to Buyer by Seller and the other transactions contemplated by this Agreement are expressly subject to approval of the Bankruptcy Court.  Buyer acknowledges that Seller must serve a Notice of Intent to Sell the Assets on all creditors and other interested parties, including other potential buyers, give anyone requesting information about the Assets an opportunity to access the Data Room where information about the Assets is located, and to cooperate with other potential buyers.  Buyer also acknowledges that this offer is subject to overbids of at least 10% greater than the Purchase Price, and that there may be an auction if the Seller receives a bid for an amount greater than the Purchase Price.

**12.    Termination**. This Agreement may be terminated by the mutual written consent of the Parties. Buyer may terminate this Agreement by written notice to Seller, if any of the conditions in Section 8 are not satisfied on or before the Closing Date, or Seller shall breach any of its obligations under this Agreement. Seller may also terminate this Agreement by written notice to Buyer if any of the conditions in Section 8 are not satisfied by the Closing Date, or Buyer shall breach any of its obligations under this Agreement. No termination under this Section 12 shall release Buyer from or act as a waiver of any claim against Buyer, at law or in equity as a result of such termination or as a result of any breach or default under this Agreement. This Agreement may be terminated as provided herein without further order of the Bankruptcy Court.

**13.    Commissions**. Buyer and Seller each represent and warrant to the other that no person or entity has been engaged by it as a broker, agent or finder, licensed or otherwise, in connection with the transaction contemplated by this Agreement. If any claim is made for a commission or finder's fee in connection with the transaction contemplated by this Agreement, then the Party upon whose alleged statement, representation or agreement that claim arises shall indemnify, defend, protect and hold harmless the other Party from and against all liability, damage and cost (including actual attorneys' fees) the other Party incurs as a result thereof. For avoidance of doubt, this Section 13 does not apply to any fee or expense payable to Seller as trustee in the Bankruptcy Case.

**14.    Break-Up Fee**. In the event that Buyer is not the successful bidder, Seller shall pay to Buyer a "break-up fee" of Five Thousand Dollars ($5,000.00). The provisions of this Section 14 expressly survive the expiration or the termination of this Agreement or the Closing (as applicable).

**15.    Proof of Funds**.  As a condition to Seller's acceptance of this Agreement, Buyer will provide Seller with written proof of funds sufficient in Seller's sole discretion to show Buyer has sufficient liquid funds to compete the purchase of the Assets and pay the full Purchase Price.

**16.    Good Faith**. Each of the Parties shall use its reasonable best efforts to take all actions and to do all things necessary, proper, or advisable in order to consummate and make effective the Transaction contemplated by this Agreement.

**17.    Expenses/Documents.** Buyer will pay all closing costs, taxes, recording costs, its legal fees, taxes, brokerage fees, finder's fees or commissions and all other costs and expenses necessary to complete or otherwise associated with this transaction. Buyer will also prepare, at Buyer's expense, all assignments, transfer documents, recordings, and other documents necessary for Seller

to transfer the Assets to Buyer. All documents shall in a form reasonably acceptable to Seller and shall not contain any terms or provisions inconsistent with this Agreement or the Final Sale Order.

**18.     Breach/Damages**.  If Buyer is not the successful bidder, and so long as Buyer does not breach this Agreement, Seller will refund the Deposit to Buyer.

**19.     Tax Effects**.  None of the Parties (nor such Parties' counsel or accountants) has made or is making any representations to any other Party (nor such Party's counsel or accountants) concerning any of the Tax effects of the Transaction provided for in this Agreement as each Party represents that each has obtained, or may obtain, independent Tax advice with respect thereto and upon which it, if so obtained, has solely relied.

**20.     Miscellaneous**.

a.     Jurisdiction/Governing Law. Buyer consents to exclusive venue and jurisdiction in the Bankruptcy Court to interpret or enforce this Agreement.  This Agreement is governed by the laws of the state of Oregon without regard to its rules on conflicts of law.

b.     Entire Agreement; Amendment.  This Agreement (together with Exhibit 1 attached hereto) supersedes all previous contracts, discussions, communications, or understandings, including any offers, letters of intent, proposals or letters of understanding, and constitutes the entire agreement between the Parties with respect to the subject matter hereof. No changes in or amendments or additions to this Agreement shall be recognized unless and until made in writing and signed by all Parties hereto.

c.     Ambiguities.  This Agreement shall be deemed to have been drafted by all parties hereto, and no ambiguity shall be resolved against any party by virtue of its participation in the drafting of this Agreement.

d.     Counterparts. This Agreement may be executed in counterparts. In the event that any signature to this Agreement or any amendment hereto is delivered by facsimile transmission, by e-mail delivery of a ".pdf or by other electronic format data file, such signature shall create a valid and binding obligation of the party executing (or on whose behalf such signature is executed) with the same force and effect as if such facsimile, ".pdf' or other electronic format data file signature page were an original thereof (and the same shall be deemed as originals).

e.     Severability. If any of the provisions of this Agreement are held invalid under any law, such invalidity shall not affect the remainder of the Agreement.

f.     No Assignment. Neither this Agreement nor any rights or obligations hereunder shall be assigned by any Party without the prior written consent of the other Parties hereto.

g.     Successors and Assigns. Subject to Section 20(f), this Agreement shall be binding upon and inure to the benefit of the successors and assigns of the Parties.

Page 3 of 4  **- INTELLECTUAL PROPERTY ASSET PURCHASE AGREEMENT**

h.      Headings; Construction. The headings of the various Sections of this Agreement are for convenience only and are not intended to explain or modify any of the provisions of this Agreement. No rule of strict construction will be applied in the interpretation or construction of this Agreement. When used in this Agreement, "including" means "including without limitation." In the event of any conflict or ambiguity between this Agreement and any Exhibit, this Agreement will control. Whenever the context requires: (a) the singular number shall include the plural, and vice versa; (b) the masculine gender shall include the feminine and neuter genders; (c) the feminine gender shall include the masculine and neuter genders; and (d) the neuter gender shall include the masculine and feminine genders.

i.      Waiver. No Party shall be deemed to have waived any claim arising out of this Agreement, or any power, right, privilege or remedy under this Agreement, unless the waiver of such claim, power, right, privilege or remedy is expressly set forth in a written instrument duly executed and delivered on behalf of such Party; and any such waiver shall not be applicable or have any effect except in the specific instance in which it is given.  A waiver by either Party of a default by the other Party is effective only if it is in writing and shall not be construed as a waiver of any other default.

j.      Further Assurances. Buyer and Seller shall each promptly sign and deliver all additional documents and perform all acts reasonably necessary to perform its obligations and carry out the intent expressed in this Agreement. Without limiting the foregoing, at Seller's request, Buyer shall enter into an amendment to this Agreement, or enter into a superseding asset purchase agreement, to reflect any changes in terms (including any change to the Purchase Price) as may occur as part of the Bankruptcy Court approval or the Auction, if applicable.

k.      No Beneficiaries. No person or entity besides Buyer, Seller and their permitted successors and assigns has any rights or remedies under this Agreement.

l.      Time. Time is of the essence of this Agreement and each and every provision hereof.

m.      Seller Capacity as Trustee of the Estate; Limitation on Liability. Buyer acknowledges and understands that Seller is the Chapter 7 trustee of the Estate and that Seller enters this Agreement solely in his capacity as Chapter 7 trustee of the Estate and not in his personal capacity, and no liability or obligations shall accrue to him personally as a result of this Agreement.

REMAINDER OF PAGE INTENTIONALLY LEFT BLANK

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be fully executed as of the day and year first above written.

SELLER

_____

DocuSigned by:

*ken Eiler*

B3607B12898B4BA...

Kenneth Eiler, Trustee

BUYER:

Silver Scope Media Limited

DocuSigned by:

16FD1A22AD3D4EE...

By:     Omri Shalom
Its:     CEO

**EXHIBIT 1**
**ASSETS**

All of the Estate's right, title and interest in the following intellectual property of the Debtor:

1. <u>Domain</u>. The domains named: <u>rogue.com</u> and rogue.eu, together with all applicable registrar accounts, administrative accounts, login credentials, DNS records, and all goodwill associated therewith. The website design and all content hosted on contained on the domain.

2. <u>Products</u>. All confidential information, trade secrets, and know-how for manufacture of all products listed in the data room provided by Seller to Buyer (the "**Products**"), including recipes, formulations, processes, specifications, ingredient lists, and quality control procedures, and all tangible and intangible embodiments thereof, whether written, electronic, or otherwise. Assets shall also include any biological strain and propagation rights associated with Pacman yeast strain and the Dead Guy Ale brand Products.

3. <u>Social Media Sites</u>. All social media sites of the Debtor, including those listed below, and all administrative passwords, multi-factor authentication tokens, and other information needed to assume control thereof:

| Channel | Website |
|---|---|
| Website | https://dev.internal.rogue.com/administrator/ |
| | www.rogue.eu (Held in trust and under license agreement by Hogan Lovells (Paris, France)) |
| Facebook | https://www.facebook.com/RogueAlesSpirits/ |
| | https://www.facebook.com/RogueBreweryNewport |
| | https://www.facebook.com/RogueAstoria |
| | https://www.facebook.com/RogueAlesBayfront |
| | https://www.facebook.com/RogueSpiritsHOS |
| | https://www.facebook.com/RoguePortlandPublicHouse |
| | https://www.facebook.com/profile.php?id=61572972639975 |
| Instagram - Rogue | https://www.instagram.com/rogueales/ |
| Instagram - Dead Guy | https://www.instagram.com/drinkdeadguy/ |
| Google Voice | https://workspace.google.com/products/voice/ |
| YouTube | https://www.youtube.com/channel/UCk4cmQ2Nc82hJUMzSg-ncug/videos |
| X | https://x.com/RogueAles |
| TikTok | https://www.tiktok.com/@rogueales?lang=en |
| LinkedIn | https://www.linkedin.com/company/rogue-ales) |
| Google | Google Business Profile |

4.  <u>Trademarks</u>. All registered and common law rights in trademarks owned by the estate, including the active and inactive registered trademarks in the table below titled "Trademarks" below (collectively, the "**Marks**"), especially including ROGUE, ROGUE-formative, and DEAD GUY Marks. All rights associated with the Marks, including (i) all registrations and applications (and all renewals, extensions, and continuations thereof), (ii) all common law rights and goodwill associated with the Marks, and all goodwill of the business associated with the use of the Marks, (iii) all rights to sue for past, present, and future infringement, dilution, or misappropriation, and to collect damages or other remedies therefor, (iv) all associated domain names, social media handles, and online identifiers incorporating the Marks, and (v) all licenses, sublicenses, permissions, and other agreements relating to the Marks, to the extent assignable.

| Trademark | TM Logo | Application No | Registration No | Country | Trademark Status |
|---|---|---|---|---|---|
| DEDICATED TO THE ROGUE IN EACH OF US | | 74618478 | 1950925 | U.S. | Registered |
| ROGUE | | 78523173 | 3041464 | U.S. | Registered |
| ROGUE | | 78699158 | 3126616 | U.S. | Registered |
| ROGUE | | 78699177 | 3148212 | U.S. | Registered |
| ROGUE | | 88834570 | 6163487 | U.S. | Registered |
| OREGON SINGLE MALT WHISKEY | | 88617228 | 6028783 | U.S. | Registered |
| ROGUE | | 2006–30109 | 5013057 | Japan | Registered |
| ROGUE | | 00002126640 | 00002126640 | U.K. | Registered |
| SUPPLY DROP | | 90291340 | 6364454 | U.S. | Registered |
| YOUNGER'S SPECIAL BITTER | | 75169969 | 2105185 | U.S. | Registered |
| ROGUE SPIRITS | | 86201104 | 5319768 | U.S. | Registered |
| CÔTES DU ROGUE | | 90531554 | 6607259 | U.S. | Registered |
| DEAD GUY | | 90557011 | 6608226 | U.S. | Registered |
| ROGUE | | 000824813 | 824813 | EUTM | Registered |
| ROGUE | | UK00900824813 | UK00900824813 | U.K. | Registered |

Page 3 of 4  **- INTELLECTUAL PROPERTY ASSET PURCHASE AGREEMENT**

| | | | | | |
|---|---|---|---|---|---|
| ROGUE | | 1557320 | TMA852071 | Canada | Registered |
| SHAKESPEARE STOUT | | 90607984 | 6777830 | U.S. | Registered |
| ROGUE | | 911558314 | 911558314 | Brazil | Registered |
| ROGUE (Chinese characters v2) | 罗格 | 24217405 | 24217405 | China | Registered |
| HAZELNUT BROWN NECTAR | | 87780298 | 5560336 | U.S. | Registered |
| DEAD GUY | | 97153431 | 7050441 | U.S. | Registered |
| SANTA'S PRIVATE RESERVE ALE | | 77594466 | 3630569 | U.S. | Registered |

5. <u>Ancillary IP Rights</u>. All copyrights, copyrightable subject matter, artwork, label designs, packaging, marketing materials, photographs, website content, advertising materials, and other creative works associated with the Products or the Marks, together with all registrations and applications therefor, and all rights to sue for past, present, and future infringement thereof.

6. <u>Records</u>. All files, documents, and records relating to the Purchased Assets, including trademark prosecution files, assignment records, title records, maintenance and renewal records, enforcement files, and licensing records.

7. <u>Other IP</u>. All other intellectual property and proprietary rights owned or controlled by the estate and used or held for use in connection with the Products or the Marks, whether or not specifically listed above.