JULIA I. MANELA, OSB#023771
Email: jmanela@wlrlaw.com
WATKINSON LAIRD RUBENSTEIN, P.C.
Attorneys at Law
1203 Willamette Street, Suite 200
PO Box 10567
Eugene, OR 97440
Telephone: 541-484-2277

Of Attorneys for Valley View Winery, Inc.

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

Portland Division

| | |
|---|---|
| In re<br><br>OREGON BREWING COMPANY<br><br>Debtor. | Case No. 25-33945-pcm7<br><br>**VALLEY VIEW WINERY, INC.'S OBJECTION TO THE TRUSTEE'S NOTICE OF INTENT TO SELL INTELLECTUAL PROPERTY TO SILVER SCOPE MEDIA LTD.** |

Valley View Winery, Inc. (**Valley View**) objects to the Trustee's Notice of Intent to Sell Intellectual Property to Silver Scope Media Ltd., [Doc 148] to the extent that it seeks to sell trademarks free of Valley View's perpetual license for rights in and to the ROGUE mark for wine, and any wine-based product including vermouth, wine coolers, and related products, including all wine-related marks, names, and uses incorporating ROGUE, including Domaine Rogue and Côte de Rogue / Cote du Rogue, and to the extent it seeks to sell those rights which are not property of the estate as they belong to Valley View. This objection is brought pursuant to 11 U.S.C § 365.

In support of its objection, the declaration of Mark Wisnovsky (**Wisnovsky Decl.**) and supporting exhibits are filed herewith, and Valley View offers the following.

VALLEY VIEW WINERY, INC.'S OBJECTION TO THE TRUSTEE'S NOTICE OF INTENT TO SELL INTELLECTUAL PROPERTY TO SILVER SCOPE MEDIA LTD. Page 1 of 8

## I.   Background

1.     The ROGUE mark was trademarked by Valley View and has been in continuous use by Valley View since 1983. *See* Wisnovsky Decl. ¶ 2.

2.     On August 8, 1997, Oregon Brewing Company (**OBC**) and Valley View entered into a Settlement Agreement and Release (**Settlement Agreement**) memorializing the terms of their resolution regarding a dispute between them over the uses of the trademark ROGUE (the **Mark**) for beer and ale by OBC and for wine by Valley View. *See* Wisnovsky Decl. ¶ 3.

3.     Pursuant to the Settlement Agreement, Valley View assigned its rights, title, and interest in the Mark to OBC (including U.S. Trademark Reg. No. 1,625,132) conditioned on OBC granting Valley View perpetual license to use the Mark in connection with wine, effective August 8, 1997 (the **August 1997 License**). This includes Valley View's rights in and to the ROGUE mark for wine, and any wine-based product including vermouth, wine coolers, etc., including all wine-related marks, names, and uses incorporating ROGUE, including Domaine Rogue and Côte de Rogue / Cote du Rogue. *See* Wisnovsky Decl. ¶ 4.

4.     Valley View and OBC were involved in multiple cases defending the Mark as to wine for Valley View's use, including a multiple year suit with Sylvan Ridge Winery. *See* Wisnovsky Decl. ¶ 5.

5.     In April 2004, OBC and Valley View entered into an amendment to the August 1997 License clarifying the parties' intentions and desires with respect to enforcement of the Mark against third-party infringements (the **April 2004 Amendment**). *See* Wisnovsky Decl. ¶ 6.

///

///

///

6.      In February 2005, OBC and Valley View entered into an agreement to negotiate concurrent terms of use of the Rogue Mark and further clarify the parties' intentions and desires with respect to enforcement of the Mark against third-party infringements (the **February 2005 Agreement**). See Wisnovsky Decl. ¶ 7.

7.      On September 19, 2005, the parties executed an Amended License Agreement confirming Valley View's irrevocable, perpetual, exclusive, fully paid-up license to use the ROGUE mark in connection with wine (the **September 2005 Amendment**). The September 2005 Amendment further clarified enforcement rights of the Mark against third parties who infringe or imitate the Mark. *See* Wisnovsky Decl. ¶ 8.

8.      In December 2018, the parties entered into an Addendum to Amend License Agreement that reaffirmed and confirms OBC granting the irrevocable, perpetual, exclusive, and fully paid-up right and license to use the Mark in connection with wine to Valley View (**December 2018 Addendum**). It also clarified that OBC would be entering into a separate license agreement with another party regarding a vermouth license. OBC agreed to pay Valley View a percentage of the royalties from the vermouth license. *See* Wisnovsky Decl. ¶ 9.

9.      The April 2004 Amendment, as referenced in the September 2005 Amendment, provides Valley View with defined enforcement rights against third parties. In pertinent part, it states that the rights given to Valley View by OBC are adequate for Valley View to bring infringement actions regarding wine against third-parties in Valley View's own name and that if Valley View brings a claim or suit for infringement relating to its exclusive use of the Mark for wine, OBC can choose to join the action. If the Court determines that Valley View does not have standing, then OBC must join the case (if doing so complies with legal requirements). The

VALLEY VIEW WINERY, INC.'S OBJECTION TO THE TRUSTEE'S NOTICE OF INTENT TO SELL INTELLECTUAL PROPERTY TO SILVER SCOPE MEDIA LTD. Page 3 of 8

enforcement framework referenced is more fully set forth in Section 4 of the September 2005 Amendment. *See* Wisnovsky Decl. ¶ 10.

10. Pursuant to the agreement between the parties, OBC initiated a cancellation proceeding against a winery that attempted to register a mark for COTES DU ROGUE. On July 10, 2017, OBC entered into a settlement agreement whereby the competitor winery agreed to not use "ROGUE" anywhere in its future labels. OBC obtained US Reg No. 4,125,385. Valley View contributed part of the funds necessary for settlement. *See* Wisnovsky Decl. ¶ 11.

11. The Trustee did not timely assume the license agreement and therefore it is deemed rejected. Under Bankruptcy Code § 365 the rejection is the equivalent of a breach outside bankruptcy which does not rescind the rights previously granted. *Mission Prod. Holdings, Inc. v. Tempnology, LLC*, 587 U.S. 370, 139 S. Ct. 1652, 203 L. Ed. 2d 876 (2019).

12. The undersigned has been in contact with counsel for Silver Scope Media, LTD., about entering into an agreement similar to the existing license agreement but as of yet no agreement has been reached.

## II.   Rights Belonging to Valley View Cannot Be Sold

The trustee cannot sell the trademark rights without those rights being subject to the Settlement Agreement and subsequent license agreement between OBC and Valley View. "The estate cannot possess anything more than the debtor itself did outside bankruptcy." *Tempnology* 587 U.S. at 381, *Tempnology* 139 S.Ct at 1663 citing to *Board of Trade of Chicago v. Johnson*, 264 U.S. 1,15, 44 S.Ct. 232, 68 L.Ed. 533 (1924).

The debtor – licensors rejection cannot revoke the trademark license. *Mission Prod. Holdings, Inc. v. Tempnology*, LLC, 587 at U.S. at 387, Tempnology, LLC, 587 at U.S. at 1666, 139 S. Ct. at 1652, 203 L. Ed. 2d 876 (2019). The Supreme Court in *Tempnology* examined the

VALLEY VIEW WINERY, INC.'S OBJECTION TO THE TRUSTEE'S NOTICE OF INTENT TO SELL INTELLECTUAL PROPERTY TO SILVER SCOPE MEDIA LTD. Page 4 of 8

rejection of a trademark licensing agreement, finding that rejection breaches a contract with all the rights that would ordinarily survive a contract breach remaining in place, the rejection itself acting as a breach. *Id.* The Court examined the effect of the rejection of a trademark licensing agreement generally under 11 U.S.C. § 365 because, while perhaps instructive, § 365 (n) does not apply to trademarks because the definition of "intellectual property" in 11 U.S.C. § 101(35A) does not include trademarks. The Court held that a rejection under § 365 cannot rescind rights that the contract previously granted. *Id*.

Valley View holds a perpetual license related to wine products stemming from the Settlement Agreement. It obligates OBC to defend the Mark. While the debtor can stop performing its obligation, the results of that breach turn on non-bankruptcy law, as set forth in *Tempenology*.

## III.   Rights

The Settlement Agreement provides at paragraph 14 that on breach the Mark reconveys to Valley View, "[I]n the event of an uncured default by Oregon Brewing, which occurs after a conveyance of the ROGUE mark pursuant to the provisions of this paragraph, the ROGUE mark shall be reconveyed to Valley by Oregon Brewing." *See* Ex 1 attached to Wisnovsky Decl. *See also* ORS 42.210 et seq. regarding interpretation of writings. The parties chose a remedy on breach which dictates the result. While an adversary proceeding may be necessary to determine Valley View's interest in the Mark if it is if not agreed upon by the parties, a sale of something that is not part of the estate cannot proceed.

## IV.   Valley View Retains Rights under Trademark Law

In addition to the contractual right on breach, the parties' settlement positioned OBC as the federal registrant but preserved Valley View's perpetual license to use the Mark for wine while imposing on OBC the duty to defend and police the Mark against third-party infringement.
VALLEY VIEW WINERY, INC.'S OBJECTION TO THE TRUSTEE'S NOTICE OF INTENT TO SELL INTELLECTUAL PROPERTY TO SILVER SCOPE MEDIA LTD. Page 5 of 8

Trademark ownership under federal law turns on priority and continuity of use in commerce, not on registration status. *See Sengoku Works Ltd. v. RMC Int'l, Ltd.*, 96 F.3d 1217, 1219 (9th Cir.) as modified, 97 F.3d 1460 (9th Cir. 1996) ("It is axiomatic in trademark law that the standard test of ownership is priority of use."). Valley View's continuous use of the Mark for wine under its perpetual license supports recognition of common-law rights at least in the wine channel based on priority and ongoing use. *See* 15 U.S.C. § 1127 (defining "use in commerce" and abandonment). The federal registration obtained by OBC is only prima facie evidence of validity and ownership, which may be rebutted by evidence of superior rights and circumstances undermining the assignment's integrity or subsequent maintenance of the mark. *See* 15 U.S.C. §§ 1057(b), 1115(a); *Tie Tech, Inc. v. Kinedyne* Corp., 296 F.3d 778, 782–83 (9th Cir. 2002).

The Settlement Agreement's structure makes it OBC's duty to defend and police the Mark integral to preserving the Mark's goodwill. A valid assignment must transfer the associated goodwill; an assignment in gross is invalid. *See* 15 U.S.C. § 1060(a)(1); *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1289 (9th Cir. 1992). Here, the ongoing duty to police is a core mechanism by which goodwill is preserved and consumer association is maintained across the parties' respective uses. To the extent the trustee rejects that duty, the result is to sever a fundamental component of the assignment's goodwill bundle and to impair the integrity of the original transfer. That impairment diminishes the probative value of the registration's prima facie presumption and supports recognition of Valley View's continuing rights to the Mark, derived from priority use and retained goodwill in the wine field. *See Tie Tech*, 296 F.3d at 783 (prima facie effect is rebuttable).

///

///

VALLEY VIEW WINERY, INC.'S OBJECTION TO THE TRUSTEE'S NOTICE OF INTENT TO SELL INTELLECTUAL PROPERTY TO SILVER SCOPE MEDIA LTD. Page 6 of 8

Further, trademark licensing requires maintenance of quality control to avoid consumer deception; a "naked" license, or failure to exercise adequate control, can result in abandonment. *See Barcamerica Int'l USA Tr. v. Tyfield Imps., Inc.*, 289 F.3d 589, 596–97 (9th Cir. 2002); *FreecycleSunnyvale v. Freecycle Network*, 626 F.3d 509, 514–16 (9th Cir. 2010). The duty to defend and police is a core quality-control function in a concurrent-use arrangement of this kind. If the estate strips the Mark of that obligation while selling the registration, the risk of uncontrolled third-party use and marketplace confusion increases, threatening the Mark's source-identifying significance and veering toward naked licensing and abandonment. *See* 15 U.S.C. § 1127 (abandonment through acts causing the mark to lose significance as a mark).

Recognizing these principles, the Court should hold that Valley View retains and, upon the trustee's breach of the policing obligation, regains enforceable common-law rights in the Mark for wine based on priority and continuous use, notwithstanding OBC's registration. *See Sengoku*, 96 F.3d at 1219–20; 15 U.S.C. §§ 1057(b), 1115(a). Because the registration's presumptions are rebuttable and because the post-breach structure undermines the validity and maintenance of the Mark's goodwill as assigned, the Court should further recognize Valley View's statutory rights in the Mark and direct appropriate relief with respect to the federal registration. The Lanham Act empowers Courts to rectify the register by ordering cancellation, transfer, or restoration as justice requires. *See* 15 U.S.C. § 1119. While the Court may not be prepared to so rule today on the ownership interest, what is clear is that Valley View has rights related to the Mark.

## V.    <u>Conclusion</u>

The Trustee cannot sell the Mark free of Valley View's perpetual license for rights in and to the ROGUE mark for wine, and any wine-based product including vermouth, wine coolers, etc., including all wine-related marks, names, and uses incorporating ROGUE, including Domaine

Rogue and Côte de Rogue / Cote du Rogue. As a result of rejection constituting a breach of the Settlement Agreement, OBC has a contractual duty to reconvey the Mark. Furthermore, Valley View has common law rights to the Mark beyond the license for use. Any sale must be subject to the rights of Valley View.

DATED: July 31, 2026.

WATKINSON LAIRD RUBENSTEIN, P.C.

By: /s/ Julia I. Manela
 Julia I. Manela, OSB No. 023771
 541-484-2277
 Of Attorneys for Valley View Winery, Inc.

JULIA I. MANELA, OSB#023771
Email: jmanela@wlrlaw.com
WATKINSON LAIRD RUBENSTEIN, P.C.
Attorneys at Law
1203 Willamette Street, Suite 200
PO Box 10567
Eugene, OR 97440
Telephone: 541-484-2277

Of Attorneys for Valley View Winery, Inc.


IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

Portland Division

| | |
|---|---|
| In re<br><br>OREGON BREWING COMPANY<br><br><br>Debtor. | Case No. 25-33945-pcm7<br><br>**DECLARATION OF MARK WISNOVSKY IN SUPPORT OF VALLEY VIEW WINERY, INC.'S OBJECTION TO THE TRUSTEE'S NOTICE OF INTENT TO SELL INTELLECTUAL PROPERTY TO SILVER SCOPE MEDIA LTD.** |


I, Mark Wisnovsky, in accordance with the provisions of 28 U.S.C. § 1746, declare under penalty of perjury that the foregoing is true and correct:

1.      I am the president of Valley View Winery, Inc., and I make this declaration in support of its Objection to the Trustee's Notice of Intent to Sell Intellectual Property to Silver Scope Media LTD.

2.      The ROGUE mark was trademarked by Valley View Wines in 1983 and has been in continuous use by Valley View since 1983.

///

///


DECLARATION OF MARK WISNOVSKY Page 1 of 3

3.      On August 8, 1997, Oregon Brewing Company (OBC) and Valley View entered into a Settlement Agreement and Release (**Settlement Agreement**) memorializing the terms of their resolution regarding a dispute between them over the uses of the trademark ROGUE (the Mark) for beer and ale by OBC and for wine by Valley View. A true and complete copy of the Settlement Agreement is attached as **Exhibit 1**, which is incorporated by reference as though fully set forth.

4.      Pursuant to the Settlement Agreement, Valley View assigned its rights, title, and interest in the Mark to OBC (including U.S. Trademark Reg. No. 1,625,132) conditioned on OBC granting Valley View perpetual license to use the Mark in connection with wine, effective August 8, 1997 (the **August 1997 License**). A true and complete copy of the August 1997 License is attached as **Exhibit 2**, which is incorporated by reference as though fully set forth.

5.      Valley View and OBC were involved in multiple cases defending the Mark as to wine for Valley View's use, including a multiple year suit with Sylvan Ridge Winery.

6.      In April 2004, OBC and Valley View entered into an amendment to the August 8, 1997, License clarifying the parties' intentions and desires with respect to enforcement of the Mark against third-party infringements (the **April 2004 Amendment**).

7.      In February 2005, OBC and Valley View entered into an agreement to negotiate concurrent terms of use of the Rogue Mark and further clarify the parties' intentions and desires with respect to enforcement of the Mark against third-party infringements (the **February 2005 Agreement**). A true and complete copy of the February 2005 Agreement is attached as **Exhibit 3**, which is incorporated by reference as though fully set forth.

8.      On September 19, 2005, the parties executed an Amended License Agreement confirming Valley View's irrevocable, perpetual, exclusive, fully paid-up license to use the ROGUE mark in connection with wine (the **September 2005 Amendment**). A true and complete copy of the September 2005 Amendment is attached as **Exhibit 4**, which is incorporated by reference as though fully set forth.

DECLARATION OF MARK WISNOVSKY Page 2 of 3

9.      In December 2018, the parties entered into an Addendum to Amend License Agreement that reaffirmed and confirms OBC granting to Valley View of the irrevocable, perpetual, exclusive, and fully paid-up right and license to use the Mark in connection with wine to Valley View (**December 2018 Addendum**). A true and complete copy of the December 18 Addendum is attached as **Exhibit 5**, which is incorporated by reference as though fully set forth.

10.      The April 2004 Amendment, as referenced in the September 2005 Amendment, provides Valley View with defined enforcement rights against third parties. The enforcement framework referenced is more fully set forth in Section 4 of the September 2005 Amendment.

11.      On July 10, 2017, OBC entered into a settlement agreement whereby the competitor winery agreed to not use "ROGUE" anywhere in its future labels. OBC obtained US Reg No. 4,125,385. Valley View contributed part of the funds necessary for settlement.

**I declare under penalty of perjury that the foregoing is true and correct and that this Declaration was executed on the 31st day of July 2026.**

/s/ Mark Wisnovsky
Mark Wisnovsky

DECLARATION OF MARK WISNOVSKY Page 3 of 3

ORIGINAL

## SETTLEMENT AGREEMENT AND RELEASE
### between
### Valley View Winery, Inc., plaintiff,
### and
### Oregon Brewing Company, defendant.

WHEREAS Valley View Winery, Inc. ("Valley View"), an Oregon corporation, is the owner of the registered trademark ROGUE for wine, U.S. Trademark Registration No. 1,625,132 (the "Valley View ROGUE mark");

WHEREAS Valley View has filed an action in the United States District Court for the District of Oregon against Oregon Brewing Company ("Oregon Brewing"), an Oregon corporation, Case No. CV 96-1197-JE, for damages and injunctive relief for trademark infringement and other claims based on Oregon Brewing's use of the brand name ROGUE in connection with Oregon Brewing's advertising, production, distribution and sale of beer and microbrewed ales; and

WHEREAS Valley View and Oregon Brewing desire to settle and compromise the claims asserted by Valley View in that action and to avoid the costs and risks entailed in that litigation:

NOW, THEREFORE, for and in consideration of the exchange of promises set forth below, and which Valley View and Oregon Brewing acknowledge are sufficient and adequate consideration, Valley View and Oregon Brewing agree as follows:

1.      Oregon Brewing agrees to pay Valley View a total of SIXTY THOUSAND DOLLARS ($60,000), on the schedule set forth below, with simple interest on the unpaid principal balance accruing at the rate of nine percent (9%) per annum from the effective date of this Agreement until paid. Payment shall be made to Valley View Winery, Inc. and delivered to its offices at 1352 Upper Applegate Road, Jacksonville, Oregon 97530, Attention: Mark Wisnovsky (or such other address as is provided to Oregon Brewing in writing), and delivered by no later than 5 p.m. (Pacific Time) on that date due. Risk of loss or late receipt is on Oregon Brewing. The payment schedule shall be as follows:

        a.      $10,000 within 5 days of the effective date of this Agreement, whichever is later;

        b.      $5,000 by August 15, 1997;

        c.      $5,000 by November 1, 1997;

        d.      $2,500 by February 1, 1998;

Page 1 -     SETTLEMENT AGREEMENT AND RELEASE
*Valley View Winery, Inc. v. Oregon Brewing Company,*
US District Court, D Or, Case No. CV 96-1197-JE.

CONFIDENTIAL
ATTORNEY EYES ONLY
OBC 000049

Defendants' Exh No. 501
USDC No. 3-03-1005-MO

Exhibit 1, Page 1 of 17

e.    $2,500 by May 1, 1998;

f.    $2,500 by August 1, 1998;

g.    $2,500 by November 1, 1998;

h.    $2,500 by February 1, 1999;

i.    $2,500 by May 1, 1999;

j.    $2,500 by August 1, 1999;

k.    $2,500 by November 1, 1999;

l.    $2,500 by February 1, 2000;

m.    $2,500 by May 1, 2000;

n.    $2,500 by August 1, 2000;

o.    $2,500 by November 1, 2000;

p.    $2,500 by February 1, 2001;

q.    $2,500 by May 1, 2001;

r.    $2,500 by August 1, 2001;

s.    $2,500 by November 1, 2001; and

t.    any remaining interest balance shall be due and payable by February 1, 2002.

2.    Oregon Brewing may prepay any or all of the principal or interest payment amounts set forth in paragraph 1 of this Agreement without penalty. Any amounts paid in excess of the amounts then due shall be applied first to accrued interest and then to principal, but in no event shall Oregon Brewing's scheduled payment obligations be accelerated as a result of any prepayment.

3.    With respect to the payment schedule set forth in paragraph 1 of this Agreement, time is of the essence. If any payment is not made by its due date or within a ten-day grace period after that due date, Valley View may give written notice of default to Oregon Brewing. If payment was not in fact made by the end of the ten-day grace period, Oregon Brewing may cure any such default by making full payment of any remaining principal and

Page 2 -    SETTLEMENT AGREEMENT AND RELEASE
*Valley View Winery, Inc. v. Oregon Brewing Company,*
US District Court, D Or, Case No. CV 96-1197-JE.

CONFIDENTIAL
ATTORNEY EYES ONLY
OBC 000050

Exhibit 1, Page 2 of 17

interest balance then due within 30 days of the date on which it received Valley View's written notice of default. Such cure shall constitute full payment and shall satisfy Oregon Brewing's obligations under paragraph 1 of this Agreement. If Oregon Brewing fails to cure as provided in this paragraph, Oregon Brewing will be in default of its obligations under this Agreement. In the case of such default, Valley View will be entitled to retain all monies paid to it under this Agreement and will retain all rights in and to the Valley View ROGUE mark going forward and Oregon Brewing will retain any and all claims and defenses (as otherwise provided herein) it may have regarding the use of the brand name ROGUE going forward.

4.   Valley View irrevocably agrees to transfer, assign, and convey all of its right, title, and interest in and to the Valley View ROGUE mark to Oregon Brewing upon receipt of full payment by Oregon Brewing of the amounts set forth in paragraph 1 of this Agreement, except that Valley View will retain an irrevocable, perpetual, non-transferable license to use the Valley View ROGUE mark in connection with Valley View's wine and wine production unless and until Valley View abandons its use of the Valley View ROGUE mark in connection with wine. Valley View's license for wine shall not include wine coolers or wine-strength malt beverage products such as Oregon Brewing's "Barley Wine" beer product. Contemporaneously with the execution of this Agreement, the parties shall execute and deliver into escrow originals of the documents memorializing the transfer of the Valley View ROGUE mark to Oregon Brewing and the grant of an irrevocable license to Valley View, copies of which are attached hereto as Exhibits A and B. The escrow agent shall be instructed to deliver the original transfer document to Oregon Brewing and the original license document to Valley View upon notification that full payment has been made by Oregon Brewing under paragraph 1 of this Agreement. The assignment and the license shall be effective upon such delivery by the escrow agent.

5.   Valley View agrees to and hereby grants Oregon Brewing an irrevocable exclusive license to Oregon Brewing to use the Valley View ROGUE mark in connection with its beer and brewed ales and other products, including wine-strength malt beverages, but excluding wine and wine production, so long as Oregon Brewing is not in default of its obligations under this Agreement. Valley View expressly acknowledges (1) that "wine" does not include "wine coolers" and (2) that Oregon Brewing's "Barley Wine" product is a beer product and is within the scope of the license to Oregon Brewing described in this paragraph. Said license shall permit Oregon Brewing to sublicense its affiliated company, Rogue River Brewing Company, to use the Valley View ROGUE mark to the full extent of Oregon Brewing's license and so long as Oregon Brewing is not in default under this Agreement. Contemporaneously with the execution of this Agreement, Valley View shall execute and deliver an original of the document memorializing the grant of an irrevocable exclusive license to Oregon Brewing, a copy of which is attached hereto as Exhibit C.

6.   Valley View agrees to dismiss its complaint in Case No. CV 96-1197-JE with prejudice and without costs or attorney fees to either party. Contemporaneously with the execution of this Agreement, Valley View, through its counsel, shall execute an original of the

Page 3 -    SETTLEMENT AGREEMENT AND RELEASE
*Valley View Winery, Inc. v. Oregon Brewing Company*,
US District Court, D Or, Case No. CV 96-1197-JE.

CONFIDENTIAL
ATTORNEY EYES ONLY
OBC 000051

Exhibit 1, Page 3 of 17

Stipulation to Dismissal with Prejudice, a copy of which is attached hereto as Exhibit D, and deliver the original to Oregon Brewing for execution and filing with the Court.

    7.    Mutual Releases.

        a.    Valley View hereby releases and forever discharges Oregon Brewing, Rogue River Brewing Company, and their present or former directors, officers, shareholders, attorneys, insurers, advisors, agents, employees, subcontractors, servants, representatives, receivers, trustees, executors, administrators, predecessors, successors, transferees, express assignees and related entities, none of whom admit liability, but each of whom expressly denies liability, of and from any and all claims, counterclaims, demands, debts, actions, causes of action, damages and demands for damages, expenses, interest, attorney fees, or compensation of any kind which Valley View ever had or now has or later may have, whether known or unknown or suspected or unsuspected arising out of the use by Oregon Brewing or Rogue River Brewing Company of the brand name ROGUE and which were or could have been asserted in Case No. CV 96-1197-JE, and any and all such claims, if any, are hereby extinguished. This release shall not extinguish (1) any claim based solely on events occurring after the dismissal of Case No. 96-1197-JE which may be pursued in the event that Oregon Brewing fails to cure a default as provided in paragraph 3 of this Agreement, or (2) any claim arising out of the terms of this Settlement Agreement and Release.

        b.    Oregon Brewing hereby releases and forever discharges Valley View, and its present or former directors, officers, shareholders, attorneys, insurers, advisors, agents, employees, subcontractors, servants, representatives, receivers, trustees, executors, administrators, predecessors, successors, transferees, express assignees and related entities, none of whom admit liability, but each of whom expressly denies liability, of and from any and all claims, counterclaims, demands, debts, actions, causes of action, damages and demands for damages, expenses, interest, attorney fees, or compensation of any kind which Oregon Brewing ever had or now has or later may have, whether known or unknown or suspected or unsuspected arising out of the use by Valley View of the name ROGUE and which could have been asserted in Case No. CV 96-1197-JE, and any and all such claims, if any, are hereby extinguished. This release shall not extinguish (1) any claim based solely on events occurring after the dismissal of Case No. 96-1197-JE which may be pursued in the event that Oregon Brewing fails to cure a default as provided in paragraph 3 of this Agreement, or (2) any claim arising out of the terms of this Settlement Agreement and Release. In the event that Oregon Brewing defaults and fails to cure and Valley View pursues a claim based solely on events occurring after the dismissal of Case No. 96-1197-JE, Oregon Brewing also hereby releases any defense of laches based on conduct preceding the dismissal of Case No. 96-1197-JE that it may have otherwise had against such a claim.

Page 4 -    SETTLEMENT AGREEMENT AND RELEASE
    *Valley View Winery, Inc. v. Oregon Brewing Company,*
    US District Court, D Or, Case No. CV 96-1197-JE.

CONFIDENTIAL
ATTORNEY EYES ONLY
OBC 000052

8.      Except as otherwise provided herein, Valley View and Oregon Brewing hereby expressly acknowledge their intent to release all claims of any kind against each other arising out of the use by Oregon Brewing, Rogue River Brewing Company, or Valley View of the brand name ROGUE and expressly waive and relinquish any rights and benefits they might otherwise have under any constitution, treaty, statute, regulation, or common law decision of Oregon or any other jurisdiction which purports to limit the effectiveness of a general release, including, by way of example and without limitation, California Civil Code Section 1542, which provides:

"A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor."

Valley View and Oregon Brewing hereby acknowledge that they or their agents may hereafter discover facts or circumstances different from or in addition to those they now know or believe to be true with respect to the claims released herein and declare that this Release shall be and remain effective in all respects notwithstanding the discovery of such different or additional facts or circumstances. Valley View and Oregon Brewing expressly waive disclosure of any additional facts by any of the parties to this Settlement Agreement and Release or who are released hereby.

9.      Valley View agrees that, so long as Valley View retains ownership of the Valley View ROGUE mark under the terms of this Agreement, Valley View will not transfer, assign, convey, or license the Valley View ROGUE mark to any other person or entity without the consent of Oregon Brewing which may be withheld for any reason. This provision shall not prohibit Valley View's present shareholder(s) from transferring shares of Valley View to family members, either directly or beneficially, during their lifetimes or by will. Nevertheless, any transfer of shares, other than to the family member of a present shareholder, that results in a new person or entity owning a controlling interest in Valley View shall be considered a transfer of the ROGUE mark that is subject to the restriction contained in the first sentence of this paragraph.

10.      Valley View warrants and represents that, to the best of Valley View's knowledge, the Valley View ROGUE mark was not obtained by fraud or misrepresentation. Valley View further warrants and represents that, to the best of Valley View's knowledge, the registration of the Valley View ROGUE mark is valid and subsisting, and that Valley View has filed a combined declaration under 15 USC sections 8 and 15 for the registered Valley View ROGUE mark in the United States Patent and Trademark Office and that all facts stated in such declaration are true.

11.      Valley View agrees that, so long as Valley View retains ownership of the Valley View ROGUE mark under the terms of this Agreement, Valley View will take all reasonable precautions to monitor and detect potential infringements or dilutions of the Valley View ROGUE mark and that it will notify Oregon Brewing of:

Page 5 -      SETTLEMENT AGREEMENT AND RELEASE
*Valley View Winery, Inc. v. Oregon Brewing Company*,
US District Court, D Or, Case No. CV 96-1197-JE.

CONFIDENTIAL
ATTORNEY EYES ONLY
OBC 000053

Exhibit 1, Page 5 of 17

          a.      any such potential infringements or dilutions,

          b.      any actions for infringement, dilution, and/or related claims against or by any other person or entity, and/or

          c.      any application for registration of the same or any similar trademark or tradename with any state or federal agency, including without limitation the United States Patent and Trademark Office,

as and when Valley View becomes aware of the events listed in items a., b., or c. of this paragraph.

12.     Valley View agrees that, so long as Valley View retains ownership of the Valley View ROGUE mark under the terms of this Agreement, Valley View will vigorously defend the Valley View ROGUE mark from infringement and or dilution by any other person's or entity's use of the same or similar trademark or tradename by:

          a.      prosecuting or defending actions for infringement, dilution. and/or related claims against or by any such other person or entity,

          b.      opposing any application for registration of the same or any similar trademark or tradename with any state or federal agency, including without limitation the United States Patent and Trademark Office, and

          c.      taking any and other actions reasonably necessary to protect the validity and strength of the Valley View ROGUE mark.

13.     Oregon Brewing agrees that. so long as Oregon Brewing retains ownership of the ROGUE mark acquired under the terms of this Agreement, and so long as Valley retains the license to use the ROGUE mark granted under this Agreement, Oregon Brewing will take all actions that are reasonably necessary to protect that ROGUE mark from infringement and or dilution by any other person's or entity's use of the same or similar trademark or tradename.

14.     Upon Valley View's becoming aware of any of the events listed in paragraph 11 of this Agreement, whether by its own monitoring efforts or by notice from Oregon Brewing or any other person or entity, in the alternative to Valley View's undertaking the actions listed in paragraph 12 of this Agreement, Valley View may instead immediately transfer, assign. and convey all of its right, title, and interest in and to the Valley View ROGUE mark to Oregon Brewing so that Oregon Brewing may take the actions it deems appropriate to the defense of the Valley View ROGUE mark. Such transfer shall be accomplished by notification to the escrow agent to deliver the original documents held in escrow under paragraph 4 of this Agreement. In the case of any such transfer under the provisions of this paragraph, Valley View shall retain the same irrevocable, perpetual, non-transferable license as contemplated in paragraph 4 of this

Page 6 -     SETTLEMENT AGREEMENT AND RELEASE
            *Valley View Winery, Inc. v. Oregon Brewing Company*,
            US District Court, D Or, Case No. CV 96-1197-JE.

CONFIDENTIAL
ATTORNEY EYES ONLY
OBC 000054

Agreement. The assignment and the license shall be effective upon such delivery by the escrow agent. Any such immediate transfer of the Valley View ROGUE mark as provided in this paragraph shall not effect Oregon Brewing's payment obligations under paragraph 1 of this Agreement or Valley View's rights in the event of an uncured default by Oregon Brewing as provided in paragraph 3 of this Agreement. In the event of an uncured default by Oregon Brewing which occurs after a conveyance of the ROGUE mark pursuant to the provisions of this paragraph, the ROGUE mark shall be reconveyed to Valley by Oregon Brewing. Said reconveyance shall be accomplished by the delivery of the Reconveyance instrument under the Escrow Agreement, in the form attached hereto as Exhibit E, which shall be executed and delivered into escrow by Oregon Brewing contemporaneously with the execution of this Settlement Agreement and Release.

15. Valley View agrees that, following the execution of this Agreement by both parties, Valley View will consent to any application by Oregon Brewing to register the name ROGUE as a trademark or tradename with any state or federal agency, including without limitation the United States Patent and Trademark Office, for use in connection with Oregon Brewing's products, including its beers and microbrewed ales (including wine-strength malt beverages such as Oregon Brewing's "Barley Wine" beer product) and promotional products, but not including wine or wine production.

16. Oregon Brewing agrees that any registration obtained by it with the consent of Valley View under the provisions of paragraph 14 of this Agreement shall be cancelled if Oregon Brewing becomes in default of its payment obligations and fails to cure such default under the provisions of paragraph 3 of this Agreement. Specifically, in the event such cancellation is required, Oregon Brewing will file with the United States Patent and Trademark Office an appropriate Application for Surrender for Cancellation under the provisions of 37 CFR section 2.172.

17. Valley View and Oregon Brewing hereby declare and represent that they fully understand the terms of this Settlement Agreement and Release and Valley View's agreement to dismiss the complaint in Case No. CV 96-1197-JE. and Valley View and Oregon Brewing voluntarily accept the consideration given as wholly sufficient for the purpose of settling and releasing the claims as set forth above.

18. Valley View and Oregon Brewing agree to execute, and contemporaneously with the execution of this Settlement Agreement and Release shall execute, an original escrow agreement to authorize the holding and delivery of the executed originals of the documents identified in and contemplated by paragraphs 4 and 14 of this Agreement. The Escrow Agreement shall be in the form of the document attached hereto as Exhibit F.

19. Valley View and Oregon Brewing agree that this Settlement Agreement and Release, including its exhibits, was the subject of negotiation between the parties and both parties shall be deemed to have jointly drafted this Settlement Agreement and Release and the exhibits hereto for purposes of any rules of construction or interpretation.

Page 7 -   SETTLEMENT AGREEMENT AND RELEASE
          *Valley View Winery, Inc. v. Oregon Brewing Company*,
          US District Court, D Or, Case No. CV 96-1197-JE.

CONFIDENTIAL
ATTORNEY EYES ONLY
OBC 000055

Exhibit 1, Page 7 of 17

20.   Valley View and Oregon Brewing agree that this Settlement Agreement and Release and the documents which the parties have agreed to execute herein, copies of which are attached hereto as exhibits, contain the entire agreement between the parties. The terms of this Settlement Agreement and Release are contractual and not mere recitals.

21.   This Settlement Agreement and Release may not be modified or amended in anyway except by a written agreement executed by both Valley View and Oregon Brewing.

22.   Valley View and Oregon Brewing agree that this Settlement Agreement and Release defines and limits the parties' rights and obligations with respect to each other for any and all issues related to the use of name ROGUE in connection with the sale of products by either party.

23.   Valley View and Oregon Brewing agree that, for purposes of this Settlement Agreement and Release, if the date by which any payment is due or any event is to occur falls on a Saturday, Sunday, or federal or state legal holiday, the due date for that payment or event shall be the next business day thereafter and any time period to be measured from such due date shall be measured from that business day.

24.   Any notices to Oregon Brewing required or permitted under the terms of this Agreement shall be sent, until notified otherwise in writing, by overnight courier (delivery receipt required), to:

Oregon Brewing Company
3135 S.E. Ferry Slip Road
Newport, OR 97365
Attention: Mr. Jack Joyce

with a copy, sent contemporaneously by overnight courier (delivery receipt required), to:

William F. Martson, Jr.
Steven M. Wilker
Tonkon, Torp, Galen, Marmaduke & Booth
1600 Pioneer Tower
888 S.W. Fifth Avenue
Portland, OR 97204-2099

Page 8 -   SETTLEMENT AGREEMENT AND RELEASE
*Valley View Winery, Inc. v. Oregon Brewing Company,*
US District Court, D Or, Case No. CV 96-1197-JE.

CONFIDENTIAL
ATTORNEY EYES ONLY
OBC 000056

Exhibit 1, Page 8 of 17

25. Any notices to Valley View required or permitted under the terms of this Agreement shall be sent, until notified otherwise in writing, by overnight courier (delivery receipt required), to:

Valley View Winery, Inc.
1352 Applegate Road
Jacksonville, OR 97530
Attention: Mr. Mark Wisnovsky

with a copy, sent contemporaneously by overnight courier (delivery receipt required), to:

Mr. Steven G. Ross
DuBoff & Ross
Hampton Oaks, Second Floor
6665 S.W. Hampton Street
Portland, OR 97223-8357

26. Valley View and Oregon Brewing agree that the subject matter of this Settlement Agreement and Release is unique and that any failure by either party to perform will cause the other irreparable harm for which it will have no adequate remedy at law and, therefore, that this Settlement Agreement and Release shall be specifically enforceable by an action in equity for specific performance and/or injunctive relief. Jurisdiction and venue over any such action shall be exclusively in the Circuit Court for the State of Oregon in Multnomah County.

27. Valley View and Oregon Brewing hereby acknowledge and agree that this Settlement Agreement and Release shall be governed by the laws of the State of Oregon.

28. This Settlement Agreement and Release is shall be effective as of August 8, 1997, upon execution by all parties. This Settlement Agreement and Release may be executed in counterparts.

VALLEY VIEW WINERY, INC.

By _____  Date __8-13-97__
Mark Wisnovsky
Its President

OREGON BREWING COMPANY

By _____  Date _____
Jack Joyce
Its President

Page 9 -   SETTLEMENT AGREEMENT AND RELEASE
           *Valley View Winery, Inc. v. Oregon Brewing Company*,
           US District Court, D Or, Case No. CV 96-1197-JE.

CONFIDENTIAL
ATTORNEY EYES ONLY
OBC 000057

Exhibit 1, Page 9 of 17

25.    Any notices to Valley View required or permitted under the terms of this Agreement shall be sent, until notified otherwise in writing, by overnight courier (delivery receipt required), to:

Valley View Winery, Inc.
1352 Applegate Road
Jacksonville, OR 97530
Attention: Mr. Mark Wisnovsky

with a copy, sent contemporaneously by overnight courier (delivery receipt required), to:

Mr. Steven G. Ross
DuBoff & Ross
Hampton Oaks, Second Floor
6665 S.W. Hampton Street
Portland, OR 97223-8357

26.    Valley View and Oregon Brewing agree that the subject matter of this Settlement Agreement and Release is unique and that any failure by either party to perform will cause the other irreparable harm for which it will have no adequate remedy at law and, therefore, that this Settlement Agreement and Release shall be specifically enforceable by an action in equity for specific performance and/or injunctive relief. Jurisdiction and venue over any such action shall be exclusively in the Circuit Court for the State of Oregon in Multnomah County.

27.    Valley View and Oregon Brewing hereby acknowledge and agree that this Settlement Agreement and Release shall be governed by the laws of the State of Oregon.

28.    This Settlement Agreement and Release is shall be effective as of August 8, 1997, upon execution by all parties. This Settlement Agreement and Release may be executed in counterparts.

VALLEY VIEW WINERY, INC.


By_____    Date_____
   Mark Wisnovsky
   Its President


OREGON BREWING COMPANY


By_____    Date_____
   Jack Joyce
   Its President


Page 9 -    SETTLEMENT AGREEMENT AND RELEASE
            *Valley View Winery, Inc. v. Oregon Brewing Company*,
            US District Court, D Or, Case No. CV 96-1197-JE.

CONFIDENTIAL
ATTORNEY EYES ONLY
OBC 000058

Exhibit 1, Page 10 of 17

Approved as to form:

_____    Date_____8/7-197_____

Steven G. Ross
DUBOFF & ROSS
Attorneys for Valley View Winery, Inc.


_____    Date_____

William F. Martson, Jr. or
Steven M. Wilker
TONKON, TORP, GALEN, MARMADUKE & BOOTH
Attorneys for Oregon Brewing Company


Page 10 -    SETTLEMENT AGREEMENT AND RELEASE
            *Valley View Winery, Inc. v. Oregon Brewing Company,*
            US District Court, D Or, Case No. CV 96-1197-JE.

CONFIDENTIAL
ATTORNEY EYES ONLY
OBC 000059

Exhibit 1, Page 11 of 17

Approved as to form:

_____  Date_____
Steven G. Ross
DUBOFF & ROSS
Attorneys for Valley View Winery, Inc.


_____  Date 11 Aug 97
William F. Martson, Jr. or
Steven M. Wilker
TONKON, TORP, GALEN, MARMADUKE & BOOTH
Attorneys for Oregon Brewing Company


Page 10 -    SETTLEMENT AGREEMENT AND RELEASE
             *Valley View Winery, Inc. v. Oregon Brewing Company*,
             US District Court, D Or, Case No. CV 96-1197-JE.

CONFIDENTIAL
ATTORNEY EYES ONLY
OBC 000060

## ASSIGNMENT

WHEREAS, Valley View Winery, Inc. ("Assignor"), an Oregon corporation having an address at 1352 Applegate Road, Jacksonville, Oregon 97530, U.S.A., did adopt and use and continues to use the trademark ROGUE for wine, and obtained U.S. Trademark Registration No. 1,625,132 therefor; and

WHEREAS, Oregon Brewing Company, an Oregon corporation having a place of business at 3135 S.E. Ferry Slip Road, Newport, Oregon 97365, U.S.A. ("Assignee"), desires to acquire all rights to said trademark and the registration thereof;

NOW THEREFORE for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Assignor does hereby sell, assign and transfer to the Assignee all rights, title and interest in and to the said trademark ROGUE together with any goodwill relating thereto and to the registration thereof, and all rights to bring suit for past or future infringement thereof.

This Assignment shall be delivered into escrow pursuant to a contemporaneously executed Settlement Agreement and Release between Assignor and Assignee, and shall become effective upon delivery by the escrow agent to the Assignee pursuant to the terms of that Settlement Agreement and Release.

Executed at _____, State of Oregon, this ____ day of August, 1997.

VALLEY VIEW WINERY, INC.

By: _____
Name: _____
Title: _____

STATE OF OREGON    )
                   ) ss.
COUNTY OF_____  )

This ____ day of _____, 1997, before me personally came the above-named _____, who executed the foregoing instrument in my presence, and who acknowledged to me that he/she executed the same of his/her own free will for the purposes set forth therein.

_____
Notary Public for Oregon
My commission expires:

EXHIBIT A
PAGE 1

CONFIDENTIAL
ATTORNEY EYES ONLY
OBC 000061

Exhibit 1, Page 13 of 17

## LICENSE AGREEMENT

This License Agreement, entered into effective the 8th day of August, 1997, is by and between Oregon Brewing Company, an Oregon corporation having a place of business at 3135 South East Ferry Slip Road, Newport, Oregon 97365 ("OBC" or "LICENSOR"), and Valley View Winery, Inc., an Oregon corporation having a place of business at 1352 Applegate Road, Jacksonville, Oregon 97530 ("VVW" or "LICENSEE").

## RECITALS

WHEREAS, effective August 8, 1997, OBC and VVW entered into a Settlement Agreement and Release ("the Settlement Agreement") memorializing the terms of their resolution of a dispute between them concerning their uses of the trademark ROGUE (the "MARK") for beer and ale by OBC and for wine by VVW;

WHEREAS, OBC has fully complied with its payment obligations to VVW pursuant to the Settlement Agreement and VVW has accordingly assigned its entire right, title and interest in the MARK to OBC, including U.S. Trademark Registration No. 1,625,132 therefore;

WHEREAS, pursuant to the Settlement Agreement OBC is to grant to VVW a license to use the MARK in connection with wine on the terms set forth herein;

NOW, THEREFORE, for good and valuable consideration, the sufficiency and receipt of which are hereby acknowledged, the parties agree as follows:

1.    LICENSE GRANT

1.1.    LICENSOR hereby grants to LICENSEE the irrevocable, perpetual and exclusive, fully paid-up right and license to use the MARK in connection with wine, including the right to use the MARK in connection with LICENSEE'S production, packaging, marketing, advertising, distribution, and sales of such wine. The rights and license granted herein by LICENSOR to LICENSEE apply only to LICENSEE'S right to use the MARK as specified herein in connection with wine and do not include the right to use the MARK in connection with any other products, including without limitation wine coolers. No other rights are granted herein and LICENSOR retains all other rights in the MARK without limitation.

1.2.    LICENSEE hereby acknowledges and agrees that LICENSOR'S wine-strength malt beverage products such as LICENSOR'S "Barley Wine" beer product are not within the scope of this license for wine.

1.3.    LICENSEE shall not have the right to grant any other license or sublicense to any other party, and the license granted herein is non-transferable.

CONFIDENTIAL
, ATTORNEY EYES ONLY
OBC 000062

Page 1 of 2 — License Agreement between
        Oregon Brewing Company, Licensor, and Valley View Winery, Inc., Licensee

EXHIBIT _B_
PAGE _1_

2.    TERM AND TERMINATION

2.1.    This License Agreement shall be delivered into escrow and shall take effect upon delivery by the escrow agent to Licensee pursuant to the Settlement Agreement, and, except as provided herein, shall be perpetual and irrevocable.

2.2.    Notwithstanding the provisions of paragraph 1.1 above, in the event that LICENSEE abandons its use of the MARK in connection with wine, this License Agreement shall terminate.

3.    QUALITY CONTROL STANDARDS

3.1.    LICENSEE agrees to reasonably cooperate with LICENSOR in facilitating LICENSOR'S control of the nature and quality of goods manufactured and sold in connection with the MARK so as to ensure that quality standards applying to the MARK are maintained.

3.2.    The parties hereby acknowledge and agree that the quality control standards and procedures currently used by LICENSEE in connection with its goods are sufficient to ensure that LICENSEE'S goods comply with LICENSOR'S quality standards for use of the MARK.

3.3.    The foregoing notwithstanding, LICENSEE agrees to provide to LICENSOR, from time to time as reasonably requested by LICENSOR, representative samples of LICENSEE'S wine for LICENSOR'S evaluation.


OREGON BREWING COMPANY            VALLEY VIEW WINERY, INC.


By:_____         By:_____
Title:_____      Title:_____
Date:_____       Date:_____


CONFIDENTIAL
ATTORNEY EYES ONLY
OBC 000063

Page 2 of 2 -- License Agreement between
     Oregon Brewing Company, Licensor, and Valley View Winery, Inc., Licensee

EXHIB. 1
PAGE 2

## LICENSE AGREEMENT

This License Agreement, entered into effective the 8th day of August, 1997, is by and between Valley View Winery, Inc., an Oregon corporation having a place of business at 1352 Applegate Road, Jacksonville, Oregon 97530 ("LICENSOR") and Oregon Brewing Company, an Oregon corporation having a place of business at 3135 South East Ferry Slip Road, Newport, Oregon 97365 ("LICENSEE").

## RECITALS

WHEREAS, LICENSOR produces, distributes, and sells wine under the trademark ROGUE, and is the owner of United States Federal Registration No. 1,625,132 for the trademark ROGUE for wine (the "MARK");

WHEREAS, LICENSEE produces, distributes and sells beer, microwbrewed ales and associated premium items under the trademark ROGUE;

WHEREAS, LICENSOR has alleged that LICENSEE'S use of ROGUE has infringed LICENSOR'S rights in the MARK, has sued LICENSEE in the United States District Court for the District of Oregon, Civil No. '96-1197-JE (the "Civil Action") for such infringement, and LICENSEE has denied such infringement;

WHEREAS, LICENSOR and LICENSEE have resolved all disputes between them concerning the MARK, and have entered into a Settlement Agreement dismissing the Civil Action ("the Settlement Agreement"), and pursuant to the Settlement Agreement have agreed to the license granted herein;

NOW, THEREFORE, for good and valuable consideration, the sufficiency and receipt of which are hereby acknowledged. the parties agree as follows:

1.   LICENSE GRANT

1.1.   LICENSOR hereby grants to LICENSEE the right and license to use the MARK in connection with beer, microbrewed ale, wine-strength malt beverages, and any and all other goods, including without limitation the right to use the MARK in connection with LICENSEE's production, packaging, marketing, advertising, distribution, and sales of such beer, microwbrewed ale, wine-strength malt beverages, and other goods, excluding wine.

1.2   LICENSOR acknowledges and agrees (1) that "wine" does not include "wine coolers" and (2) that wine-strength malt beverages such as LICENSEE'S "Barley Wine" product are beer products and are within the scope of this license.

1.3   LICENSOR shall retain the right to use the MARK in connection with wine.

CONFIDENTIAL
ATTORNEY EYES ONLY
OBC 000064

Page 1 of 2 — License Agreement between
        Valley View Winery, Inc., Licensor, and Oregon Brewing Company, Licensee

EXHIBIT __C__
PAGE __1__

2.    TERM AND TERMINATION

2.1.    This License Agreement shall take effect upon the date of signing by both parties and shall continue until such time as LICENSEE has fully complied with its payment obligations to LICENSOR, pursuant to the Settlement Agreement.

2.2.    Except as set forth in the Settlement Agreement, this License Agreement and the license granted herein are irrevocable, and shall be terminable by LICENSOR only upon LICENSEE'S uncured default under the terms of the Settlement Agreement.

3.    QUALITY CONTROL STANDARDS

3.1.    LICENSEE agrees to reasonably cooperate with LICENSOR in facilitating LICENSOR'S control of the nature and quality of LICENSEE'S goods manufactured and sold in connection with the MARK so as to ensure that quality standards applying to the MARK are maintained.

3.2.    The parties hereby acknowledge and agree that the quality control standards and procedures currently used by LICENSEE in connection with its goods are sufficient to ensure that LICENSEE'S goods comply with LICENSOR'S quality standards for use of the MARK.

3.3.    The foregoing notwithstanding. LICENSEE agrees to provide to LICENSOR, from time to time as reasonably requested by LICENSOR, representative samples of LICENSEE'S ale for LICENSOR'S evaluation.

VALLEY VIEW WINERY. INC.                OREGON BREWING COMPANY

By:_____           By:_____
Title:_____          Title:_____
Date:_____           Date:_____

CONFIDENTIAL
ATTORNEY EYES ONLY
OBC 000065

Page 2 of 2 – License Agreement between
    Valley View Winery, Inc., Licensor, and Oregon Brewing Company, Licensee

EXHIBIT _C_
PAGE _1_

## LICENSE AGREEMENT

This License Agreement, entered into effective the 8ᵗʰ day of August, 1997, is by and between Valley View Winery, Inc., an Oregon corporation having a place of business at 1352 Applegate Road, Jacksonville, Oregon 97530 ("LICENSOR") and Oregon Brewing Company, an Oregon corporation having a place of business at 3135 South East Ferry Slip Road, Newport, Oregon 97365 ("LICENSEE").

## RECITALS

WHEREAS, LICENSOR produces, distributes, and sells wine under the trademark ROGUE, and is the owner of United States Federal Registration No. 1,625,132 for the trademark ROGUE for wine (the "MARK");

WHEREAS, LICENSEE produces, distributes and sells beer, microwbrewed ales and associated premium items under the trademark ROGUE;

WHEREAS, LICENSOR has alleged that LICENSEE'S use of ROGUE has infringed LICENSOR'S rights in the MARK, has sued LICENSEE in the United States District Court for the District of Oregon, Civil No. '96-1197-JE (the "Civil Action") for such infringement, and LICENSEE has denied such infringement;

WHEREAS, LICENSOR and LICENSEE have resolved all disputes between them concerning the MARK, and have entered into a Settlement Agreement dismissing the Civil Action ("the Settlement Agreement"), and pursuant to the Settlement Agreement have agreed to the license granted herein;

NOW, THEREFORE, for good and valuable consideration, the sufficiency and receipt of which are hereby acknowledged. the parties agree as follows:

1.    LICENSE GRANT

1.1.   LICENSOR hereby grants to LICENSEE the right and license to use the MARK in connection with beer, microbrewed ale, wine-strength malt beverages, and any and all other goods, including without limitation the right to use the MARK in connection with LICENSEE's production, packaging, marketing, advertising, distribution, and sales of such beer, microbrewed ale, wine-strength malt beverages, and other goods, excluding wine.

1.2   LICENSOR acknowledges and agrees (1) that "wine" does not include "wine coolers" and (2) that wine-strength malt beverages such as LICENSEE'S "Barley Wine" product are beer products and are within the scope of this license.

1.3   LICENSOR shall retain the right to use the MARK in connection with wine.

CONFIDENTIAL
ATTORNEY EYES ONLY
OBC 000064

Page 1 of 2 — License Agreement between
      Valley View Winery, Inc., Licensor, and Oregon Brewing Company, Licensee

EXHIBIT C
PAGE 1

Exhibit 2, Page 1 of 2

2.    TERM AND TERMINATION

2.1.    This License Agreement shall take effect upon the date of signing by both parties and shall continue until such time as LICENSEE has fully complied with its payment obligations to LICENSOR, pursuant to the Settlement Agreement.

2.2.    Except as set forth in the Settlement Agreement, this License Agreement and the license granted herein are irrevocable, and shall be terminable by LICENSOR only upon LICENSEE'S uncured default under the terms of the Settlement Agreement.

3.    QUALITY CONTROL STANDARDS

3.1.    LICENSEE agrees to reasonably cooperate with LICENSOR in facilitating LICENSOR'S control of the nature and quality of LICENSEE'S goods manufactured and sold in connection with the MARK so as to ensure that quality standards applying to the MARK are maintained.

3.2.    The parties hereby acknowledge and agree that the quality control standards and procedures currently used by LICENSEE in connection with its goods are sufficient to ensure that LICENSEE'S goods comply with LICENSOR'S quality standards for use of the MARK.

3.3.    The foregoing notwithstanding. LICENSEE agrees to provide to LICENSOR, from time to time as reasonably requested by LICENSOR, representative samples of LICENSEE'S ale for LICENSOR'S evaluation.

VALLEY VIEW WINERY. INC.                OREGON BREWING COMPANY


By:_____            By:_____
Title:_____            Title:_____
Date:_____            Date:_____

CONFIDENTIAL
ATTORNEY EYES ONLY
OBC 000065

Page 2 of 2 – License Agreement between
        Valley View Winery, Inc., Licensor, and Oregon Brewing Company, Licensee

EXHIBIT _C_
PAGE _1_

Exhibit 2, Page 2 of 2

Sep 15 02 09:48p                                                                      *C818*    p.2
03/31/2005 13:18 FAX 5039687228          THE DUBOFF LAW GROUP                             ☒003

## AGREEMENT

### Parties

This Agreement ("Agreement") dated February __, 2005, is by and between Oregon Brewing Company, an Oregon corporation ("OBC") and Valley View Winery, an Oregon corporation ("VV"),.

### Recitals

WHEREAS, OBC is the owner of the federally-registered trademark ROGUE for wine;

WHEREAS, OBC uses the mark ROGUE, alone and in combination with other words and designs, in connection with the marketing and sale of beer and other products unrelated to wine;

WHEREAS, OBC has granted VV an exclusive license to use the ROGUE mark for wine;

WHEREAS, VV brought an action in the United States District Court for the District of Oregon entitled *Valley View Winery v. Briggs Hills Investments, Inc., dba Hinman Vineyards and Elizabeth Chambers* (Civil Case No. CV 03-1005 MO) ("Lawsuit I"), in which VV sought to prevent Hinman from using in connection with wine or wine-related products the ROGUE mark or any mark confusingly similar to the ROGUE mark;

WHEREAS, Hinman disputed the claims that VV asserted in Lawsuit I, and raised as a defense that VV lacked standing to pursue some of the asserted claims;

WHEREAS, OBC and VV brought a second action in the United States District Court for the District of Oregon entitled *Valley View Winery and Oregon Brewing Company v. Briggs Hills Investments, Inc., dba Hinman Vineyards and Elizabeth Chambers* (Civil Case No. CV 04-1279 MO) ("Lawsuit II"), in which OBC and VV sought to prevent Hinman from using in connection with wine or wine related products the ROGUE mark or any mark confusingly similar to the ROGUE mark; and

WHEREAS, as part of the settlement of Lawsuit I and Lawsuit II, OBC has agreed to pay $15,000 to VV, in exchange for VV agreeing to revise the terms of OBC's and VV's relationship with respect to the ROGUE mark, such that VV shall continue to have the right and ability to use the ROGUE mark for wine and OBC shall continue to have the right and ability to use the ROGUE mark for beer and products unrelated to wine, and that each party shall have the right, but not the obligation, to bring suits based on infringement and/or dilution of the ROGUE mark.

03/23/2005  18:03    5032413780          ROGUE ALES                          PAGE  02

Exhibit 3, Page 1 of 4

Sep 15 02 09:48p                                                                                    p.1
  03/31/2005 13:18 FAX 5039667228             THE DUBOFF LAW GROUP             (         ⌀004

NOW, THEREFORE, in consideration of their mutual promises, OBC and VV agree as follows:

1.    Oregon Brewing Company shall pay Valley View Winery an amount equal to Fifteen Thousand Dollars ($15,000) on or before March 3 1, 2005, by delivering a check to VV's counsel, Leonard Duboff, at 6665 SW Hampton Street, Suite 200, Portland, Oregon 97223 . The check shall be made out to "The DuBoff Law Group, LLC, Lawyer Trust Account."

2.    OBC and VV will negotiate in good faith for the terms of a concurrent use agreement ("Concurrent Use Agreement"), in order to protect VV's and OBC's respective rights to use the family of ROGUE marks. The parties shall not have any obligation to reach an agreement on the terms of a Concurrent Use Agreement.

3.    In the event that OBC and VV do not reach agreement on the terms of a mutually acceptable Concurrent Use Agreement or do not receive necessary approval for concurrent registration, if any, from the United States Patent and Trademark Office, the parties agree that they shall revise the License Agreement currently in effect between them (including any amendments) to allow VV and OBC to each bring suit separately and in their own name to enforce their respective rights in the family of ROGUE marks. The parties shall in the revised License Agreement provide, to the greatest extent possible, that each party shall have standing to separately sue for infringement and dilution of the ROGUE mark, but that neither party shall be required to bring suit with respect to the ROGUE mark and shall not be required to contribute financially to the other party's enforcement efforts, though, each party will cooperate with the other with respect to enforcement efforts and if it is ultimately decided by a court of competent jurisdiction that the party bringing suit for enforcement lacks standing to enforce any of the ROGUE marks, then the other party agrees to cooperate in such enforcement efforts to the greatest extent required for enforcement.

4.    If OBC and VV are unable to reach agreement on the terms of a revised License Agreement, then any disputes concerning the drafting of the revised License Agreement shall be resolved by an arbitrator appointed with the approval of both parties. If the parties are unable to agree on an arbitrator, then Doug Hamilton shall select the arbitrator. The arbitrator's decision shall be final and binding.

VALLEY VIEW WINERY,                     OREGON BREWING COMPANY
an Oregon corporation                   an Oregon corporation

By: _MARK WISNOVSKY_                    By: _____
Its:    PRESIDENT                       Its: _____


FAX RECEIVED
TIME: _1:46 pm_
DATE: _3/31/05_
MATTER # _2658_
                                                                     JDR

PAGE 03                          ROGUE ALES

Exhibit 3, Page 2 of 4

*2878*



# The DuBoff
# LAW GROUP, LLC

6665 SW Hampton Street, Suite 200 Portland, OR 97223-8357
PHONE: 503-968-8111 FAX: 503-968-7228 E-MAIL: info@dubofflaw.com
WEB: http://www.dubofflaw.com

*TAXED*
*MAR 3 1 2005*
*By*

# FACSIMILE

## IF YOU HAVE ANY TRANSMISSION PROBLEMS,
## CALL JOHN AT (503) 968-8111.
## REPLY TO OUR FAX NO. (503) 968-7228.

our file no.: 2878

client name: valleyview

DATE: March 31, 2005

NUMBER OF PAGES (including this cover letter): 3

**Call First**

| | |
|---|---|
| **TO:** | **David S. Aman, Esq.** |
| **COMPANY:** | **Tonkon Torp, LLP** |
| **FAX NO:** | **(503) 274-8779** |
| **FROM:** | **Leonard D. DuBoff/jd** |

## MESSAGE:

Following please find the agreement signed by Mark Wisnovsky.
Thank you.

## CONFIDENTIALITY NOTICE

This facsimile transmission (and/or documents accompanying it) may contain confidential information belonging to the sender which is protected by the attorney-client privilege. The information is intended only for the use of the individual or entity named above. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this information is strictly prohibited. If you have received this transmission in error, please immediately notify us by telephone to arrange for return of the documents.

Exhibit 3, Page 3 of 4

```
                         ***********************
                         ***   TX REPORT    ***
                         ***********************

         TRANSMISSION OK

         TX/RX NO              4371
         CONNECTION TEL                   5032748779
         SUBADDRESS
         CONNECTION ID
         ST. TIME              03/31 16:13
         USAGE T               01'19
         PGS.                      3
         RESULT                OK
```



# THE
# DuBoff
## LAW GROUP, LLC

6665 SW Hampton Street, Suite 200   Portland, OR  97223-8357
PHONE: 503-968-8111  FAX: 503-968-7228  E-MAIL: info@dubofflaw.com
WEB: http://www.dubofflaw.com

# FACSIMILE

## IF YOU HAVE ANY TRANSMISSION PROBLEMS,
## CALL JOHN AT (503) 968-8111.
## REPLY TO OUR FAX NO. (503) 968-7228.

our file no.: 2878
client name: valleyview

DATE:  March 31, 2005

NUMBER OF PAGES (including this cover letter):  3

Call First

TO:  **David S. Aman, Esq.**
COMPANY:  **Tonkon Torp, LLP**
FAX NO:  **(503) 274-8779**

FROM:  **Leonard D. DuBoff/jd**

## MESSAGE:

Following please find the agreement signed by Mark Wisnovsky.
Thank you.

Exhibit 3, Page 4 of 4

## Amended License Agreement

The Amended License Agreement is entered into between Oregon Brewing Company, an Oregon corporation having a place of business at 2320 O.S.U. Drive, Newport, Oregon 97365 ("OBC" or "Licensor"), and Valley View Winery, Inc., an Oregon corporation having a place of business at 1352 Applegate Road, Jacksonville, Oregon 97530 ("VVW" or "Licensee"), and is effective this _19_ day of September, 2005.

## Recitals

A.     Whereas, effective August 8, 1997, OBC and VVW entered into a Settlement Agreement and Release ("the Settlement Agreement") memorializing the terms of their resolution of a dispute between them concerning their uses of the trademark ROGUE ("the Mark") for beer and ale by OBC and for wine by VVW;

B.     Whereas, pursuant to the Settlement Agreement, VVW assigned its entire right, title and interest in the Mark to OBC, including U.S. Trademark Registration No. 1,625,132 therefore;

C.     Whereas, pursuant to the Settlement Agreement, OBC granted to VVW a license to use the Mark in connection with wine, said license effective August 8, 1997 (the "August 8, 1997 License");

D.     Whereas, on or about April, 2004, OBC and VVW entered into an amendment to the August 8, 1997 License, said amendment clarifying the parties' intentions and desires with respect to enforcement of the Mark against third party infringements (the "April, 2004 Amendment");

E.     Whereas, the OBC and VVW now desire to further clarify the terms under which VVW shall be licensed to use and enforce the Mark.

Therefore, in consideration of the foregoing, incorporated herein by this reference, $15,000 paid to VVW by OBC, and in exchange for the rights and obligations set forth below and other valuable consideration, OBC and VVW agree as follows:

1.     **License Grant.**

1.1     Licensor hereby grants to Licensee and confirms its prior grant to Licensee pursuant to the August 8, 1997 License, the irrevocable, perpetual and exclusive, fully paid-up right and license to use the Mark in connection with wine, including the right to use the Mark in connection with Licensee's production, packaging, marketing, advertising, distribution, and sales of such wine. The rights and license granted herein by Licensor to Licensee apply only to Licensee's right to use the Mark as specified herein in connection with wine and do not include the right to use the Mark in connection with any other products, including without limitation wine coolers.

1.2     Licensee hereby acknowledges and agrees that Licensor's wine-strength malt beverage products such as Licensor's "Barley Wine" beer product are not within the scope of this license for wine.

Exhibit 4, Page 1 of 3

    1.3    Licensee shall not have the right to grant any other license or sublicense to any other party, and the license granted herein is non-transferable.

## 2.    Term and Termination

    2.1    Except as provided herein, this Amended License Agreement shall be perpetual.

    2.2    Notwithstanding the provisions of paragraph 1.1 above, in the event that Licensee abandons its use of the Mark in connection with wine, this Amended License Agreement shall terminate.

## 3.    Quality Control Standards

    3.1    Licensee agrees to reasonably cooperate with Licensor in facilitation of Licensor's control of the nature and quality of the goods manufactured and sold in connection with the Mark so as to ensure that Licensor's quality standards applying to the Mark are maintained.

    3.2    The parties hereby acknowledge and agree that the quality control standards and procedures currently used by Licensee in connection with its manufacturing of wine sold under the Mark are sufficient to ensure that Licensee's goods comply with Licensor's quality standards for use of the Mark.

    3.3    The foregoing notwithstanding, Licensee agrees to provide to Licensor, from time to time as reasonably requested by Licensor, representative samples of Licensee's wine sold under the Mark and promotional materials therefore for Licensor's evaluation as provided herein. Licensor shall pay Licensee the wholesale price for all such samples requested.

## 4.    Enforcement of the Mark

    4.1    The rights granted to Licensee hereunder shall include the right of Licensee, if it so desires, to commence or prosecute any claims or suits in its own name against a third party for infringements or imitations of the Mark solely in connection with wine. The rights granted to Licensee hereunder shall be sufficient for Licensee to bring any claims or suits in its own name including, but not limited to, the right to bring actions for trademark infringement under 15 U.S.C. § 1125(a), 15 U.S.C. § 1125(c) pertaining to dilution claims, and 15 U.S.C. § 1114, and related state and common law claims.

    4.2    In any claim or suit brought by Licensee against a third party for infringement of Licensee's exclusive license to use the Mark for wine, Licensor may, at its sole discretion, join such claim or suit, and will join such claim or suit if a court holds that Licensee lacks standing, provided that joining such claim or suit Licensor can satisfy its obligations under FRCP 11. The foregoing notwithstanding, it is the parties' intention that the rights granted by Licensor to Licensee herein are sufficient to provide Licensee the right to prosecute claims and suits against third party infringers using the Mark or an imitation thereof in connection with wine, in its own name without Licensor's participation in such claims and suits.

Exhibit 4, Page 2 of 3

4.3     In any communication with a third party infringer, Licensee shall notify such third party that Licensee is an exclusive Licensee under the Mark for wine and that it has the right to commence claims or suits in its own name.  Licensee shall copy Licensor with any written communication Licensee sends to a third party infringer.

4.4     Licensee shall notify Licensor of any infringements or imitations by others of the Mark for wine that may come to Licensee's attention, and Licensor shall notify Licensee of any infringements or imitations by other of Licensee's exclusive license to use the Mark for wine that may come to Licensor's attention.

4.5     The rights granted to Licensee herein shall have no effect on Licensor's right to commence or prosecute any claims or suits against a third party for infringements or imitations of the Mark.

4.6     Licensor and Licensee each shall be solely responsible for their own attorneys' fees, costs, and expenses incurred in bringing any claims or suits against third parties, and each shall be entitled to retain any monetary award or recovery obtained through judgment or settlement.  In the event both Licensor and Licensee jointly sue or bring suit, each party shall be responsible for their own attorney fees, costs, and expensed incurred in such suits, but any monetary recovery of damages or attorneys' fees will be divided equally between Licensor and Licensee.

## 5.     Effect on Prior Agreements; Counterparts

5.1     This Amended License Agreement retroactively amends the terms of the August 8, 1997 License and the April, 2004 Amendment, both of which are terminated hereby.

5.2     This Amended License Agreement amends the Settlement Agreement by canceling paragraph 13 on page 6 in its entirety.  The remaining terms of the Settlement Agreement are unchanged by this Amended License Agreement.

5.3     This Agreement may be executed in two or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same Agreement.

Agreed:

Oregon Brewing Company                               Valley View Winery, Inc.

By: Jack Joyce                                      By: MARK WISNOVSKY
Title: president                                    Title: PRESIDENT
Date: September 20, 2005                             Date: September 19, 2005

Exhibit 4, Page 3 of 3

**Addendum to Amended License Agreement**

This Addendum modifies the Amended License Agreement dated September 19, 2005 (the "Agreement") between Oregon Brewing Company ("Licensor") and Valley View Winery ("Licensee"), and is effective this __ day of December, 2018.

Section 1.1 of the Agreement is amended to read as follows:

1.1     Licensor hereby grants to Licensee and confirms its prior grant to Licensee pursuant to the August 8, 1997 License, the irrevocable, perpetual and exclusive, fully paid-up right and license to use the Mark in connection with wine, including the right to use the Mark in connection with Licensee's production, packaging, marketing, advertising, distribution, and sales of such wine. The rights and license granted herein by Licensor to Licensee apply only to Licensee's right to use the Mark as specified herein in connection with wine and do not include the right to use the Mark in connection with any other products, including without limitation wine coolers **or vermouth.**

Section 1.2 of the Agreement is amended to read as follows:

1.2     Licensee hereby acknowledges and agrees that Licensor's wine-strength malt beverage products such as Licensor's "Barley Wine" beer product are not within the scope of this license for wine. **Licensee further acknowledges that vermouth is not within the scope of this license for wine.**

A new Section 6 is added to the Agreement and reads as follows:

**6      Vermouth License and Royalties.**

**6.1     Licensee acknowledges and understands that Licensor will enter into a separate license agreement with The Rogue Group, Ltd. d/b/a Regal Rogue, concerning vermouth (the "Vermouth License"). Licensee is not a party to, nor will have any rights or obligations stemming from, the Vermouth License. Per Section 1.2 of this Agreement, vermouth is not within the scope of Licensee's license.**

**6.2     Section 6.1 notwithstanding, Licensor will pay Licensee 30% of any royalties received by Licensor as a result of the Vermouth License.**

All other terms of the Agreement remain unchanged.

Agreed:

Oregon Brewing Company                          Valley View Winery

(Licensor)                                      (Licensee)


_____          _____

By:                                             By:

Title:                                          Title:

Date:                                           Date:


Exhibit 5, Page 1 of 1

<u>**CERTIFICATE OF SERVICE**</u>

I certify that on July 31, 2026, I served or caused to be served a true, correct, and complete copy of the **VALLEY VIEW WINERY, INC.'S OBJECTION TO THE TRUSTEE'S NOTICE OF INTENT TO SELL INTELLECTUAL PROPERTY TO SILVER SCOPE MEDIA LTD.** via ECF/CM to the ECF Registered Participants listed below:

- **TODD M. ARNOLD** tma@lnbyg.com
- **JASON M AYRES** jason.ayres@foster.com, nikea.smedley@foster.com,esther.jeong@foster.com,litdocket@foster.com
- **Kenneth S Eiler** or10@ecfcbis.com
- **DANIEL KUBITZ** dkubitz@schwabe.com, centraldocket@schwabe.com;jlowes@schwabe.com
- **JUSTIN D LEONARD** Justin.Leonard@doj.oregon.gov, OR_DOJ_ECFNotices@doj.oregon.gov
- **HOWARD M LEVINE** hlevine@sussmanshank.com, asinclair@sussmanshank.com,ecf.howard.levine@sussmanshank.com,howard-levine-5487@ecf.pacerpro.com
- **SHANNON R MARTINEZ** shannon@shannonmartinezlaw.com
- **DOUGLAS R PAHL** dpahl@perkinscoie.com, rwolf@perkinscoie.com;docketpor@perkinscoie.com
- **CAMERON MARSH PERLA** cameron.perla@usdoj.gov, ilana.greenslade@usdoj.gov
- **STEPHEN A RAHER** sraher@pdx-law.com
- **NATHAN R. RING** nathan@rrvlawyers.com, michelle@rrvlawyers.com
- **CHAD M STOKES** cstokes@cablehuston.com, bhenry@cablehuston.com
- **US Trustee, Portland** USTPRegion18.PL.ECF@usdoj.gov

I further certify that on July 31, 2026, I served or caused to be served the **VALLEY VIEW WINERY, INC.'S OBJECTION TO THE TRUSTEE'S NOTICE OF INTENT TO SELL INTELLECTUAL PROPERTY TO SILVER SCOPE MEDIA LTD.** by depositing true, exact, and complete copies in the United States Post Office at Eugene, Oregon, enclosed in a sealed envelope, with first class postage prepaid and addressed to the parties at the addresses stated below:

Bennington & Moshofsky, P.C.
8285 SW Nimbus Ave #191
Beaverton, OR 97008

PARNA A. MEHRBANI on
behalf of Trustee Kenneth S Eiler
1300 SW 5th Ave. Ste 2400
Portland, OR 97201

Microstar Logistics, LLC
Todd Erickson
2401 15 St. 2nd Fl
Denver, CO 80202

NORTHRIM FUNDING
SERVICES, A DIVISION OF
NORTHRIM BANK
Jason Medley, Spencer Fane LLP
3040 Post Oak Blvd., Suite 1400
Houston, TX 77056-6560

WATKINSON LAIRD RUBENSTEIN, P.C.

By:  /s/ Julia I. Manela
      Julia I. Manela, OSB No. 023771
      (541) 484-2277
      Of Attorneys for Valley View Winery, Inc.