Howard M. Levine, OSB No. 800730
SUSSMAN SHANK LLP
1000 SW Broadway, Suite 1400
Portland, OR 97205-3089
Telephone: (503) 227-1111
Facsimile: (503) 248-0130
E-Mail: hlevine@sussmanshank.com

Attorney for Chapter 7 Trustee, Kenneth S. Eiler

IN THE UNITED STATES BANKRUPTCY COURT

DISTRICT OF OREGON

| | |
|---|---|
| In re<br><br>OREGON BREWING COMPANY,<br><br>Debtor. | Case No. 25-33945-pcm7<br><br>OBJECTION TO ACKLEY BRANDS' MOTION FOR ORDER AUTHORIZING ITS PARTICIPATION IN AUCTION |

Kenneth S. Eiler, Trustee (the "**Trustee**") objects to Ackley Brands' Motion for Order Authorizing its Participation in Auction (ECF 172) (the "**Motion**"), and in support thereof states as follows.

**Ackley Brands Lacks Standing to File the Motion**

Ackley Brands ("**Ackley**") lacks standing to bring the Motion, and on that basis alone the Motion should be summarily denied. Ackley's failure to state the basis of its standing to bring the Motion, and the absence of legal standing, is fatal.

Ackley has no pecuniary interests directly affected by the bankruptcy case. It does not plead any injury, nor allege any harm it suffered, by the Trustee's decision to honor the terms of the Notice of Intent to Sell / Motion for Authority to Sell Property Free and Clear of Liens (ECF. 148) (the "**Sale Motion**").

Standing is an essential prerequisite to a party's participation in a bankruptcy proceeding. *In re Sisk*, 962 F.3d 1133, 1141 (9th Cir. 2020) (quoting U.S. Const. art. III, § 2, cl. 1; *Lujan v.*

*Defenders of Wildlife,* 504 U.S. 555, 560 (1992)). A party seeking relief from a bankruptcy court must establish both constitutional standing and prudential standing. *In re Paulson*, No. 09-32439-TMR7, 2020 WL 1547112, at *1 (Bankr. D. Or. Mar. 31, 2020). Constitutional standing requires a personal stake in the proceeding sufficient to establish an injury in fact that is fairly traceable to the challenged conduct and capable of being redressed by the court. Id. In addition, prudential standing requires the party to demonstrate a direct and adverse interest in the matter before the court. Id. (citing *Palmdale Hills Property, LLC v. Lehman Commercial Paper, Inc*., 654 F.3d 868, 874 (9th Cir. 2011)).

**Ackley Brands Did Not Monitor the Case**

By its own admission, Ackley knew the Debtor filed chapter 7 (Declaration of Brandon Ackley ¶2, ECF No. 173) and that Ackley was interested in acquiring the Debtor's IP Assets that are the subject of the Notice. On August 28, 2026 Ackley's counsel sent the undersigned an email containing a December 1, 2025 industry article in which Ackley was prominently mentioned as being a party interested in acquiring the Debtor's assets. (Declaration of Howard M. Levine, ¶ 2, Ex. 1). Yet, despite this claimed interest, Ackley ignored the bankruptcy case and now tries to blame the Trustee for Ackley's own actions and omissions.

Despite Ackley's claimed interest, for the nearly nine months since November 24, 2025 (the "**Petition Date**"), Ackley failed to monitor the bankruptcy case, ignored published industry media reports about the noticed sale of the IP assets, and did nothing until August 28, 2026 to contact the Trustee's counsel about Ackley's interest in purchasing the IP Assets. Now, after the deadline, and at the last minute, Ackley wants to upend the orderly sale process.

Even more remarkable is that Ackley, that "owns several prominent beer and wine businesses in the Pacific Northwest" (Declaration of Brandon Ackley ¶ 1) did not see the industry article titled "Dead Guy is Not Dead Yet! Rogue Ales & Spirits Shows Signs of Life" dated August 17, 2026 (four days before the bid deadline) in the Washington Beer Blog. Levine Decl. ¶ 3 (Ex. 2). He also apparently missed the industry article titled "Rogue Dead Guy Gets New Lease on

Life, as Bid for Bankrupt Brewery's IP Reaches $400,000" published in Vinepair, and updated on August 13, 2026 (eight days before the bid deadline). Levine Decl. ¶ 3 (Ex. 3), and the article titled "Rogue Brewing Receives $400,000 Offer to Buy Intellectual Property as Bidding Continues", dated August 14, 2026 (seven days before the bid deadline), published in ProBrewer. Levine Decl. ¶ 3 (Ex. 4).

**Other Bidders Paid Attention**

In contrast to Washington-based Ackley, the Trustee received the stalking horse bid from a purchaser in the United Kingdom. Plus, the Trustee received six overbids for the IP Assets after it filed the Sale Notice. Those overbids came from entities based in Pennsylvania, California, Ohio, and Oregon.

The six overbidders all complied with the Notice. They learned about the Debtor's chapter 7 filing, contacted the Trustee, made appropriate inquiries, visited the data room, and decided to submit bids to purchase the IP Assets. All six overbidders timely submitted their overbids and will participate in the auction.

Ackley's argument that the Trustee should disregard the Sale Notice, and the bidders' compliance with it, to allow Ackley to submit a late bid disregards the Trustee's obligations to the existing seven bidders to honor the process those bidders in good faith followed. The Trustee has signed Amended Asset Purchase Agreements from those bidders that the Trustee feels he is contractually and ethically bound to follow. Those bidders cooperated with the Trustee in all aspects of participating in the bidding process and in scheduling the auction. Ackley should not be allowed to chill the bidding process, and risk bidders withdrawing their bids, because Ackley decides to show up after the deadline. The Trustee believes it has a duty to honor its agreements with the seven bidders and not accept late bids.

It matters for this case, and for the bankruptcy process in general, that when bidders for assets in good faith timely engage in the bidding process and comply with the procedures, they can expect the Court to enforce those procedures. This is especially the case here, where Ackley,



SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

by its own admission, had a long standing interest in the Debtor's IP Assets, and had access to media that gave it plenty of notice of the sale, and then ignored the opportunity to timely participate in the bidding process.

**Response to Legal Arguments**

In the Court's August 31, 2026, *Order Overruling Valley View Winery, Inc.'s Objection To Sale And Authorizing Sale Of Intellectual Property* (ECF 171), the Court, *inter alia*, granted the Sale Motion, which means that that the Court approved the bid procedures set forth in the Sale Motion requiring qualified bids by no later than August 21, 2026, and authorizing the auction. (See Sale Motion, at ¶ 9 and stalking-horse APA attached thereto, at ¶¶ 2.a. and 15). The Motion ignores the significance of the Court's August 31st order.

Other than a statement in the Motion that Ackley will bid $510,000 (the minimum $10,000 incremental bid over the current high bidder) (Motion, ¶ 20), nothing in the Ackley Declaration supports or suggests that Ackley will outbid anyone else for the IP Assets. In contrast to the Motion, the Ackley Declaration only states it is prepared to **match** the current high bid of $500,000 (Ackley Decl., ¶4). Thus, there is no evidence Ackley's participation will benefit the estate.

*In re Edward,* 228 B.R. 552, 562 (Bankr. E.D. Pa. 1998), cited by Ackley, does not support its position. The Court there stated "the important notions of finality and regularity in judicial auctions are appeased if the court acts consistently with the rules by which the particular sale is conducted and in compliance with the bidders' reasonable expectations." The Court also noted that "at some point, such as when the court actually enters an order approving the sale, expectations become sufficiently crystallized so as to render it improper to frustrate anticipated results except in the limited circumstances where there is a grossly inadequate price or fraud in the conduct of the proceedings." Given this Court approved the sale in the August 31st order, the existing bidders expectations have "crystallized." The Motion contains no hint or suggestion the price is inadequate or there has been fraud.



SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

*In re Mama's Original Foods, Inc.*, 234 B.R. 500, 505 (Bankr. C.D. Cal. 1999), also cited by Ackley, dealt with an insufficient notice procedure the court found chilled bidding and discouraged overbids. Given that the Trustee received six overbids from around the country, the notice was clearly sufficient. Also, *Mama's Original* case does not establish a general rule that a court may disregard reasonable auction procedures whenever doing so might generate additional bidding.

In *In re Watertech Holdings*, LLC 619 BR 324, 335 (Bankr. D.S.C., 2020), relied on by Ackley, where the Court accepted the late bid, there was evidence in that case that the existing bids "grossly undervalued the sale assets to the point the Court would not have approved the sale." No such evidence is present in this case, and this Court already approved the sale.

**Conclusion**

Ackley lacks standing to bring the Motion, Ackley had notice and more than enough opportunity to access the data room and submit a timely bid. For the reasons of its own, it chose not to do so. Based upon the foregoing, the Court should deny the Motion.

Dated this 3rd day of September, 2026

SUSSMAN SHANK LLP

By /s/ Howard M. Levine
Howard M. Levine, OSB No. 800730
Attorneys for Trustee, Kenneth S. Eiler



SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130